748 F.2d 701
 36 Fair Empl.Prac.Cas. 468,
35 Empl. Prac. Dec. P 34,861, 242 U.S.App.D.C. 11
 Richard KRODEL, Appellant,
v.
Andrew J. YOUNG, in his official capacity as Associate
Commissioner, Office of Hearings and Appeals,
Social Security Administration, et al.
Richard KRODEL
v.
Andrew J. YOUNG, in his official capacity as Associate
Commissioner, Office of Hearings and Appeals,
Social Security Administration, et al.
Department of Health and Human Services and Margaret M.
Heckler, Secretary in her official capacity, Appellants.
 Nos. 83-1426, 83-1427.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 24, 1984.
Decided Nov. 20, 1984.
As Amended Nov. 20, 1984.
 
 Erik L. Kitchen, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Robert S. Greenspan, Atty., Dept. of Justice, Washington, D.C., were on brief, for cross-appellants in No. 83-1427 and appellees in No. 83-1426. Wendy M. Keats, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for cross-appellants in No. 83-1427 and appellees in No. 83-1426.
 Charles A. Kubinski, with whom John C. Armor was on the brief, for appellant in No. 83-1426.
 Roy J. Bucholtz, Reston, Va., for cross-appellee in No. 83-1427.
 Before WRIGHT and WALD, Circuit Judges, and MacKINNON, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge WALD.
 WALD, Circuit Judge:
 
 
 1
 This appeal concerns whether the Bureau of Hearings Appeals ("Bureau" or "BHA") of the Social Security Administration discriminated against the plaintiff, Richard Krodel, on the basis of age and whether Krodel can seek damages from his supervisors for infringing his first amendment rights. In 1976 and 1977, Krodel, then a 60 year old management analyst at the BHA, applied for five separate promotions and was rejected for each. After exhausting his administrative remedies, he brought suit against the Bureau and various BHA supervisors in their official capacity, claiming that the BHA's refusal to promote him violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq. He also sued various BHA officials, in their individual and official capacities, for infringing his first and fifth amendment rights. Krodel sought declaratory relief, promotion and back pay under the ADEA; he also sought damages from the individual defendants under his constitutional claim. Although the district court dismissed his constitutional claims, it found that the BHA had violated the ADEA in its refusal to promote Krodel to a Supervisory Management Analyst Position ("Position 1") in February of 1976. On appeal, the Bureau challenges the district court's age discrimination holding; Krodel challenges only its dismissal of his first amendment claim.[1] We affirm the district court.
 
 I. THE BACKGROUND
 
 2
 The age discrimination claim hinges on the circumstances surrounding the BHA's selection of Mary Pronovost rather than Krodel to fill Position 1. Krodel was initially hired as a management analyst by the BHA in December of 1968; in July of 1971, he was promoted from level GS-11 to level GS-12. His eight years of experience as a management analyst and his qualifications for Position 1 are not disputed by the government. Pronovost, who was 39 years old at the time of the promotion, joined the BHA in 1973 as a GS-11 staff assistant in the BHA's Division of Facilities after serving as a confidential assistant in another section of the agency. See Krodel v. Young, Civ. No. 80-3183, slip op. at 5-6 (February 9, 1983) [hereinafter cited as "ADEA Opinion"]. Pronovost had no management analyst experience whatsoever until three months before her promotion. See id. at 6, 32-33.
 
 
 3
 On July 28, 1975, the BHA announced that it would consider applications for a GS-13 Supervisory Management Analyst position. Applications for the vacancy were solicited from all employees of the Department of Health and Human Services, for a period of approximately three weeks. See id. at 4. Krodel applied for this position, but Pronovost did not. In November of 1975, defendant Levi Ogden, the head of the relevant BHA section, decided to cancel the vacancy announcement because, in his judgment, none of the applicants demonstrated the requisite experience in management analysis. See id.
 
 
 4
 While the initial applications for Position 1 were pending, Pronovost attended a three-day training course in management for government administrators. See id. at 6. In December, Ogden requested that Pronovost be reassigned to a GS-12 Management Analyst position in the BHA's central office; effective December 7, 1975, she was reassigned to that position without competition. Id. On February 11, 1976, the vacancy announcement for Position 1 was reposted. The second announcement, however, solicited only employees of the central office and remained open only until February 18th. At trial, Ogden could give no explanation for reducing the time period and the area of consideration for the second vacancy announcement. See id. at 7. This time, both Krodel and Pronovost applied for the promotion to Position 1.
 
 
 5
 The BHA's personnel office determined that seven applicants, including Krodel and Pronovost, met the minimum qualifications for Position 1 and referred those names to a rating panel comprised of defendant Hallet Duncan and another BHA supervisor. The rating panel submitted to Ogden a "best qualified list" consisting of Krodel, Pronovost and another BHA employee, then 41 years old. After reviewing the best qualified list, Ogden wrote a memorandum recommending the selection of Pronovost. See id. at 13. Ogden stated that his recommendation was "based on personal observation and frequent professional contact with [Pronovost]" in her position in the Division of Facilities and "her outstanding performance of duties as a Management Analyst since December 1975." Memorandum to the Director of BHA (March 17, 1976), Joint Appendix ("J.A.") at 211a. Consistent with standard BHA practice, Ogden's recommendation was approved by defendants Robert Trachtenberg, Director of the BHA, and John Poore, Assistant Director of the BHA.
 
 
 6
 After exhausting his administrative remedies, Krodel sued BHA officials for age discrimination in connection with the Bureau's failure to promote him to Position 1 and to four other positions at the BHA. He also alleged that the BHA had refused to promote him in retaliation for his critical comments about "agency mismanagement, misuse of funds and human ignorance and inefficiency," Plaintiff's First Amended Complaint p 53, J.A. at 34a, thereby violating his first amendment rights. Finally he claimed that the BHA's actions deprived him of a "vested property interest" in "promotion and managerial status." Id. He sought promotion and back pay from defendant Andrew Young, the present director of the BHA, and Bivens-type[2] damages from the other individual defendants.
 
 
 7
 Pursuant to the Bureau's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court dismissed Krodel's constitutional claims at the onset of the litigation. See Krodel v. Young, Civ. No. 80-3183, mem. op. at 2-3 (July 9, 1983) [hereinafter cited as "Constitutional Opinion"]. The court ruled that Krodel could not establish that his alleged criticisms of the BHA constituted speech protected by the first amendment. See id. at 2-3.[3]
 
 
 8
 After a six-day bench trial on the age discrimination claim, the district court concluded that the BHA violated the ADEA in its decision not to promote Krodel to Position 1. Applying the tripartite evidentiary scheme developed in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the district court ruled that the BHA's explanation of the promotion decision was unworthy of credence and a pretext for discrimination. See ADEA Opinion at 29. The district court also found indicia of age discrimination in the Bureau's failure to follow its own promotion policies, statistical evidence, and largely uncontested anecdotal evidence concerning BHA practices. See id. at 33-35. Viewing the evidence as a whole, the district court concluded that "the true reason underlying [the] promotion [to Position 1] was age discrimination." Id. at 36.
 
 
 9
 We now affirm the district court's ADEA ruling and its dismissal of Krodel's first amendment action. Because we conclude that Krodel's Bivens action is barred by the Supreme Court's recent decision in Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), however, we need not determine whether his alleged criticisms of the BHA constitute protected speech under the first amendment.
 
 II. THE AGE DISCRIMINATION CLAIM
 
 10
 The ADEA requires federal employment decisions to "be made free from any discrimination based on age." 29 U.S.C. Sec. 633a(a); cf. id. Sec. 623 (prohibiting private employers from taking adverse action against employees "because of" their age). The BHA argues that the district court misapprehended the thrust of the ADEA and erroneously employed the age discrimination statute to second-guess government employment decisions.
 
 
 11
 The district court's conclusion of law reflect its belief that plaintiff, and not Ms. Pronovost, was a more appropriate person to fill Position 1. However, the ADEA is not intended as a vehicle for general review of business decisions, and does not provide a remedy for nonselection based on factors, permissible or impermissible, other than age.
 
 
 12
 Brief for Appellants/Cross-Appellees at 11. We believe, however, that the relevant ADEA issues on appeal are substantially narrower. They concern whether the district court required from Krodel sufficient proof to create a reasonable inference that the Bureau was motivated by impermissible age discrimination and whether the district court's factual findings supporting the ultimate issue of age discrimination were clearly erroneous. We conclude that the district court applied the correct legal standard, imposed the appropriate burden of proof on the plaintiff, and did not make any clearly erroneous findings of fact.
 
 A. Procedure and Proof Under the ADEA
 
 13
 Courts have generally applied the tripartite evidentiary scheme developed in the context of Title VII litigation to suits brought under the ADEA. See Coburn v. Pan American World Airways, Inc., 711 F.2d 339, 342-43 (D.C.Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); Cuddy v. Carmen, 694 F.2d 853, 856-57 (D.C.Cir.1982); Johnson v. Lehman, 679 F.2d 918, 922 (D.C.Cir.1982). According to the guidelines originally articulated in McDonnell Douglas, an individual plaintiff claiming disparate treatment must first make out a prima facie case--i.e., must demonstrate sufficient facts to create a reasonable inference that race, sex or age was a factor in the employment decision at issue. Once a prima facie case has been established, the employer bears a minimal burden of "producing evidence" tending to show that the plaintiff was denied employment or promotion for a legitimate nondiscriminatory reason. If the employer does so--and if his evidence is credible--the plaintiff must show by a preponderance of the evidence that the employer's asserted legitimate reason is a "pretext" for discrimination. See McDonnell Douglas, 411 U.S. at 800-02, 93 S.Ct. at 1823-24; Burdine, 50 U.S. at 252-53, 101 S.Ct. at 1093-94; Coburn, 711 F.2d at 342; see generally Segar v. Smith, 738 F.2d 1249, 1297-98 (D.C.Cir.1984) (Edwards, J., concurring). In disparate treatment cases, "the ultimate burden of persuading the trier of fact that the defendant discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. Moreover, the Supreme Court has recently admonished that the relevant issue on appeal of a fully litigated discrimination suit is ordinarily whether the plaintiff has met this "ultimate" burden, not whether one of the intermediate burdens has been met. See United Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).
 
 
 14
 In an ADEA case, the plaintiff's ultimate burden is to prove that age was "a determining factor" in the challenged employment decision. Coburn, 711 F.2d at 342; Cuddy, 694 F.2d at 857. The plaintiff must prove that "age made a difference in the employer's decision," Cuddy, 694 F.2d at 857-58, in the sense that, "but for" the discriminatory motive, the employee would have been hired, promoted or retained. See id. at 858 & n. 23. The question of discriminatory intent, moreover, is a finding of fact subject to the "clearly erroneous" standard of review established in Rule 52(a) of the Federal Rules of Civil Procedure. See Pullman-Standard, Inc. v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); Aikens, 103 S.Ct. at 1485. The district court's ADEA ruling in this case can thus only be overturned if the court committed legal error or if we are "left with the definite and firm conviction that a mistake has been committed." United States v. Gypsum, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); see Coburn, 711 F.2d at 345.
 
 
 15
 B. The District Court's Application of the ADEA Standard
 
 
 16
 Neither party disputes the district court's ruling concerning the first two "stages" of the plaintiff's case. The district court held that Krodel established a prima facie case by demonstrating (1) that he belongs to the statutorily protected age group (40-70 years), (2) that he was, by the government's own admission, qualified for the position at issue, (3) that he was not promoted and (4) that the employee eventually promoted was outside the protected class. See ADEA Opinion at 26-28. This ruling comports with the governing law in this circuit, see Coburn, 711 F.2d at 342; Cuddy, 694 at 850-57, and it creates an inference that, absent any evidence to the contrary, the BHA acted for discriminatory reasons. The district court also held that the defendant articulated a legitimate, nondiscriminatory reason for its action by "stating simply that the agency selected the better candidate." ADEA Opinion at 28.
 
 
 17
 At this point, the parties were brought to the "ultimate question" of motive: the plaintiff was required to demonstrate that the defendant's proffered reason was merely a pretext for age discrimination. As the district court correctly stated, Krodel had to "prove by a preponderance of the evidence that age made a difference in the employer's decision not to hire him." ADEA Opinion at 27. This appeal thus hinges on the elements required to prove that the Bureau's explanation of the challenged promotion was a pretext for discrimination. The Bureau's argues that Krodel must discredit its explanation and provide particularized evidence of actual age discrimination in the specific employment decision at issue in order to meet this ultimate burden. Brief for Appellants/Cross-Appellees at 11. The district court, by contrast, concluded that Krodel could prevail by demonstrating that the Bureau's explanation was a sham and by offering additional circumstantial evidence of age discrimination in the BHA. See ADEA Opinion at 35-36. We conclude that the district court's approach was entirely correct.
 
 
 18
 In Burdine, the Court indicated that a discrimination plaintiff could satisfy his or her burden of proof in one of two independent ways:The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.
 
 
 19
 Burdine, 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis supplied). In Aikens, moreover, the court clearly indicated that a discrimination plaintiff need not submit direct evidence of discriminatory intent. See Aikens, 103 S.Ct. at 1481 n. 3. Noting that "trial courts should not treat discrimination differently from other ultimate questions of fact," id. at 1482, the court stated that "the district court must decide which party's explanation it believes," id., on the basis of all the evidence before it. See Cooper v. Federal Reserve Bank of Richmond, --- U.S. ----, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984); see also Int'l B'hd of Teamsters v. United States, 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977) ("Elimination of [the defendant's] reasons for the refusal to hire is sufficient, absent any other explanation, to create an inference that the decision was a discriminatory one.")[4]
 
 
 20
 This circuit, in turn, has not required an ADEA plaintiff to offer particularized evidence of intentional discrimination in order to prove pretext. See Coburn, 711 F.2d at 344; Cuddy, 694 F.2d at 859; cf. Segar, 738 F.2d at 1302 (Edwards, J., concurring). In Cuddy, the court indicated that age discrimination plaintiffs almost necessarily have to rely on indirect evidence, including discrepancies in the defendant's proffered explanation, to prove that an employer was motivated by illegitimate concerns.
 
 
 21
 [W]hen weighing the evidence the District Court must keep in mind the difficulties plaintiffs face in proving ADEA violations. Employees and applicants for employment have great informational disadvantages: they cannot reach into the minds of decisionmakers, and therefore they usually can gather only circumstantial evidence of discriminatory motives. Hence, the trier of fact should take special care to require of plaintiff only that he present sufficient evidence to allow a reasonable person to draw from it the inference of the fact to be proved. Plaintiff-appellant should only have to show that age was a determining factor, as earlier defined, in the government's decision to hire someone else by a preponderance of the evidence.
 
 
 22
 Cuddy, 694 F.2d at 859 (citations and footnotes omitted). See also Mistretta v. Sandia Corp., 639 F.2d 588, 597 (10th Cir.1980). At the very least, then, Burdine, Aikens and Cuddy make clear that an ADEA plaintiff who has established a prima facie case and has effectively discredited the employer's proffered justification need not, in all cases, submit additional evidence concerning the particular employment decision at issue in order to demonstrate that age was a determining factor in the employer's action.[5]
 
 
 23
 In effect, the BHA argues that the plaintiff only proved, and the district court merely concluded, that the government made a poor promotion decision--a conclusion too weak to support a finding of pretext. Yet the district court clearly relied on more than a simple challenge to the soundness of the defendant's employment decision. Instead, it found that the government's version of the selection process was a virtual sham and inferred from this conclusion and the additional circumstantial evidence before it that age was a determining factor in the decision not to promote Krodel. We conclude, then, that the district court applied the correct legal standard to Krodel's age discrimination claim. The ADEA ruling can only be overturned if the district court committed legal error in considering the plaintiff's circumstantial evidence of age discrimination or if it made "clearly erroneous" factual findings. See Segar, 738 F.2d at 1272-73.
 
 C. The District Court's Factual Findings
 
 24
 Although the district court made numerous findings of fact, they can be grouped into 4 broad categories, each of which is challenged by the defendant: (1) that the Board failed to offer any credible explanation of why Pronovost, the eventual selectee for Position 1, was "better qualified" than the plaintiff, (2) that various statistics supported the charge of age discrimination, (3) that a BHA administrator had expressed a general preference for younger employees, and (4) that, as attested to by several witnesses, the BHA generally favored younger employees. We conclude that the district court properly considered this evidence and that its eventual conclusions of fact were not clearly erroneous.
 
 
 25
 1. The Bureau explanation. The district court found that Pronovost had been pre-selected for Position 1 in view of the fact that the original vacancy announcement was cancelled and that the subsequent vacancy announcement appeared to be tailored for Pronovost who lacked substantial supervisory experience. See ADEA Opinion at 32-34. The court also found that Pronovost was erroneously overrated by the screening committee--a rating that placed her on the best qualified list--and that Ogden's testimony as to her qualifications was not credible. See id. at 33-34. In effect, the BHA suggests that we should undertake a de novo review of these findings. It argues that the district court erroneously minimized Krodel's shortcomings as an employee and that the trial judge should have respected Ogden's "good-faith evaluation of the factors that led him to believe that Pronovost would make a preferable supervisor." Brief for Appellants/Cross-Appellees at 17. The district court, however, carefully examined Pronovost's qualifications and Ogden's stated reasons for preferring Pronovost to Krodel and concluded that Ogden's explanation was unworthy of belief. Ogden was the only witness at trial who testified as to Pronovost's qualifications--"a critical witness," as the court put it. ADEA Opinion at 31. Yet he could not offer any specific reason as to why he recommended her on either direct or cross-examination; indeed he repeatedly stated that he did not recall Pronovost's work. The district court also noted that Ogden had testified under oath at least three times before the trial (in administrative hearings in 1978 and 1980, and in a deposition in 1982) and that on each prior occasion he admitted that he could not recall Pronovost's actual performance. See id. at 31-32. "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses," Fed.R.Civ.P. 52(a), and we cannot overturn the district court's reading of Ogden on the cold record before us. Similarly, the district court specifically noted the plaintiff's possible deficiencies as an employee, see ADEA Opinion at 16-17, and there is no indication that the court "minimized" these considerations in judging Ogden's credibility.
 
 
 26
 The BHA also persistently asserts that the district court's conclusion that the government did not adhere to its own procedures in selecting Pronovost over the plaintiff "is simply insufficient in and of itself to support a finding of age discrimination." Brief for Appellants/Cross-Appellees at 16-17, n. 4. Regardless of whether this position is correct, see supra pp. 706-08, the court's finding that Pronovost was preselected for Position 1 is undeniably relevant to the question of discriminatory intent. "The fact that a court may think that the employer misjudged the qualifications does not in itself expose him to ... liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." Burdine, 450 U.S. at 259, 101 S.Ct. at 1097, see also Cuddy, 694 F.2d at 859; Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n. 6 (1st Cir.1979). In this case, of course, the district court did not conclude that the government made a good-faith "mistake" in promoting Pronovost over Krodel; instead, it relied on the improper procedures and uncreditable testimony concerning Pronovost's promotion to conclude that the government's explanation was unworthy of belief. We cannot say that the district court's finding that Pronovost was preselected for Position 1 was clearly erroneous.
 
 
 27
 2. The district court's use of statistics. The trial judge considered statistical evidence that the number of ADEA complaints filed against the Management Analysis Branch of the BHA significantly increased between 1974 and 1977, that the percentage of employees over 40 in that Branch decreased after 1974, and that the average age in that office was 37.5. The government offers an explanation other than age discrimination that might account for each "statistical finding." More importantly, however, the BHA argues that Krodel's statistics cannot be probative of age discrimination because they were not adequately compared to the relevant labor pool.
 
 
 28
 The importance of statistical evidence in Title VII and ADEA claims varies considerably according to the type of discrimination alleged. Statistical evidence is crucial in disparate impact cases, where plaintiffs need not prove discriminatory intent but must show that specific employment practices "select applicants ... in a racial pattern significantly different from that of the pool of applicants." Albermarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); see Segar, 738 F.2d at 1274. In actions involving claims of classwide disparate treatment--so-called pattern or practice cases--plaintiffs also typically rely on statistical evidence to show that comparably qualified members of the protected group are treated differently across the board. Courts typically infer a discriminatory motive from this difference in treatment. See Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 361 & n. 46, 97 S.Ct. 1843, 1867 & n. 46, 52 L.Ed.2d 396 (1977). In these two contexts--where liability depends on a challenge to systemic employment practices--courts have required finely tuned statistical evidence, normally demanding a comparison of the employer's relevant workforce with the qualified populations in the relevant labor market. See Hazelwood School District v. United States, 433 U.S. 299, 308 n. 13, 97 S.Ct. 2736, 2741 n. 13, 53 L.Ed.2d 768 (1977); Segar, 738 F.2d at 1274-75; Davis v. Califano, 613 F.2d 957, 963 (D.C.Cir.1979).
 
 
 29
 In individual disparate treatment cases, however, statistical evidence is less significant because the ultimate issue is whether the particular plaintiff was the victim of an illegitimately motivated employment decision. Yet statistical evidence is certainly relevant to a showing of pretext in disparate treatment actions. See McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825-26. Although the Supreme Court has not directly addressed the precision with which an individual disparate treatment plaintiff must present statistical evidence, it has pointed out that such evidence is admissible and may be helpful, though ordinarily not dispositive. See Furnco Constr. Co. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The Court has likewise emphasized that statistics "come in infinite variety and, like other kinds of evidence, they may be rebutted. In short, their usefulness depends on all the surrounding facts and circumstances." Teamsters, 431 U.S. at 340, 97 S.Ct. at 1856.
 
 
 30
 In the case before us, there is no indication that the district court thought the challenged statistics dispositive of, or even essential to, Krodel's claim. The trial judge explicitly considered the defendant's challenges to the meaningfulness of the statistics and concluded that they had at least some relevance to its ultimate judgment concerning discriminatory intent. "Although the statistics presented by the plaintiff are broad and tentative," the court concluded, "the simple percentage comparisons are not so simplistic as to lack meaning." ADEA Opinion at 39 n. 3. In this context, a trial judge should be allowed to consider a disparate treatment plaintiff's statistics and to judge for herself their meaningfulness to the question of discriminatory intent. Cf. Trout v. Lehman, 702 F.2d 1094, 1101 (D.C.Cir.1983) ("Deficiencies in the data base may, of course, detract from the value of [statistical] evidence, but ordinarily would not obliterate its evidentiary value."), vacated on other grounds, --- U.S. ----, 104 S.Ct. 1404, 79 L.Ed.2d 732 (1984). We thus affirm the district court's treatment of Krodel's statistics.
 
 
 31
 3. Duncan's age-related remark. The district court also credited a witness' testimony that Duncan, a Bureau supervisor and a member of the rating panel for Position 1, expressed a general preference for younger employees in the BHA. See ADEA Opinion at 34. The court further noted that Duncan neither admitted nor denied that he had made such a statement. The government argues that this finding of fact was "clearly erroneous," that Duncan in fact denied making any such statement. See Brief for Appellant/Cross Appellees at 14-15. As we read the record, however, Duncan did not deny making this remark; at best he testified that he did not recall the conversation in question, but he surely left open the possibility he could have made the statement or conveyed such an impression. See Trial Transcript at 663, J.A. at 125a. Age-related comments are certainly probative of discriminatory motive, see Mistretta v. Sandia Corp., 639 F.2d 588, 600 (10th Cir.1980), and the district court's conclusion that Duncan made such a remark amounts to a credibility judgment entitled to substantial deference.
 
 
 32
 4. Other anecdotal evidence. Finally, the government attacks the court's consideration of other anecdotal testimony concerning age discrimination within the BHA. Anecdotal evidence of discrimination plays an important role in discrimination suits by bringing cold numbers to life. See Hazelwood, 433 U.S. at 308-09, 97 S.Ct. at 2741-42. The trial judge, in turn, is normally responsible for determining how much weight such evidence should be accorded. Cf. Segar, 738 F.2d at 1278 ("All evidence that a plaintiff presents can contribute to [an inference of discrimination], and should ... be considered as cumulative."). Here, the defendants had ample opportunity to challenge the anecdotal evidence at trial, and the district court merely gave the evidence some, not dispositive, weight. The BHA cannot renew its challenges to this evidence on appeal by arguing that such testimony should be given "no weight whatsoever." See Scofield v. Bolts & Bolts Retail Stores, 21 F.E.P. 1478, 1480 (S.D.N.Y.1979) (finding age-related remarks highly probative of discriminatory intent).
 
 D. Conclusion
 
 33
 The BHA argues that, even if these discrete factual findings were not clearly erroneous or based on legal error, the evidence as a whole cannot support the district court's finding of discriminatory intent. See Brief for Appellants/Cross-Appellees at 18; Reply Brief at 4-5. In effect, this position suggests that an appellate court can aggressively review the ultimate finding of discrimination in an ADEA claim free from the constraints of Rule 52(a), even though it is bound by the clearly erroneous rule in reviewing subsidiary factual findings. The Supreme Court has expressly rejected this distinction between "ultimate" and "subsidiary" facts for the purposes of reviewing district court findings of discriminatory intent. See Pullman-Standard, Inc. v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). In Pullman-Standard, the Court held that "under [the seniority provision of Title VII] discriminatory intent is a finding of fact to be made by the trial court." Id. at 288, 102 S.Ct. at 1789. Although the Court indicated that a more aggressive review might be appropriate in other mixed questions of law and fact, see id. at 286-87 n. 16, 102 S.Ct. at 1788-89 n. 16, it rather clearly indicated that a finding of discriminatory intent can be overturned on appeal only if clearly erroneous.
 
 
 34
 Here, the BHA sought to rebut the plaintiff's prima facie case by arguing that Pronovost was better qualified for Position 1 than the plaintiff. On all the evidence before it, including testimony concerning suspicious procedures, the critical testimony of the recommending government official, statistical evidence, and anecdotal evidence, the district court concluded that the proffered explanation was a sham and that age was a determining factor in the government's refusal to promote the plaintiff. In the absence of legal error or clearly erroneous factual findings, the district court's choice of "which party's explanation of the employer's motivation it believes," Aikens, 103 S.Ct. at 1482, must be affirmed.
 
 III. THE FIRST AMENDMENT CLAIM
 
 35
 Krodel also alleged in his complaint that the BHA refused to promote him in retaliation for his persistent criticism of the Bureau's management. As a management analyst, Krodel was responsible for analyzing and criticizing the effectiveness of the BHA's practices and procedures. See Constitutional Opinion at 2. The district court concluded that Krodel could not state a claim for damages under the first amendment because "[p]erforming one's job duties is not constitutionally protected speech." Id. We agree that Krodel's Bivens action under the first amendment should be dismissed, but not for the reason relied upon by the district court. Instead, we conclude that Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), precludes Krodel from seeking first amendment damages from his superiors in a dispute arising out of his employment relationship.
 
 
 36
 In Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), a case decided after the district court's dismissal of Krodel's first amendment claim, the Court held that the constitutional status of public employee speech turns on whether the speech relates to "a matter of public concern." Id. at 147, 103 S.Ct. at 1690. Measured against this standard, Krodel's criticisms of BHA management could conceivably state a claim under the first amendment irrespective of his responsibilities as a management analyst. See, e.g., McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir.1983). In any event, the Connick Court clearly indicated that the relevant first amendment inquiry must be "determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 14748, 103 S.Ct. at 1690-91; see also Murray v. Gardner, 741 F.2d 434, 438 (D.C.Cir.1984) (noting that a public employee's first amendment claim "depends on careful scrutiny of the facts surrounding the employee's declaration"). Because the constitutional status of public employee speech turns on this fact-specific, case-by-case consideration of the relevant context, it would normally be quite difficult to resolve an employee's Bivens claim on a Rule 12(b)(6) motion to dismiss. For the purpose of such a motion, the factual allegations of the complaint must be taken as true, and any ambiguity concerning the sufficiency of claim resolved in favor of the pleader. See, e.g., Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C.Cir.1983). Krodel, in turn, expressly alleges that the BHA retaliated against him for speaking out on matters of public concern. See Plaintiff's First Amended Complaint p 53, J.A. at 34a.
 
 
 37
 We need not, however, determine whether Krodel has alleged constitutionally protected speech because we conclude that his Bivens claim is precluded by Bush. In Bush, the Court declined to allow a career employee of the competitive civil service to bring a damage action under the first amendment. See id. at 2406. In particular, the Court held that
 
 
 38
 Because such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, we conclude that it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy.
 
 
 39
 Id. As a member of the pre-Civil Service Reform Act competitive civil service, Krodel enjoyed meaningful remedies against the government for a free speech related claim arising out of his employment relationship.[6] In particular, Krodel could have processed his complaint inside the agency, see 5 C.F.R. Sec. 771.108 (1977), and could have obtained direct judicial review of an adverse agency ruling under the Administrative Procedure Act, 5 U.S.C. Sec. 706. See Carducci v. Regan, 714 F.2d 171, 174 n. 1 (D.C.Cir.1982) (collecting cases); see also Porter v. Califano, 592 F.2d 770 (5th Cir.1979). In fact, however, Krodel never raised his first amendment related complaints in any of the five separate grievances he filed at the agency level. His free speech claim is decidedly an afterthought and subsidiary to the age discrimination claim upon which he has prevailed. Cf. Constitutional Opinion at 2-3.
 
 
 40
 Krodel himself concedes that "[i]f Bush were the principal relevant case this Court should be inclined to affirm the district court ... on the grounds that there was a 'comprehensive' scheme of civil service remedies both available and used." Brief for the Appellees/Cross Appellants at 25. Krodel argues, however, that Bush can be distinguished because his criticisms concerned public waste and were therefore in the public interest. This argument was squarely rejected in Bush itself. See Bush, 103 S.Ct. at 2417. Because Krodel enjoyed a comprehensive statutory forum for his free speech claims, we conclude that he cannot bring a Bivens action against his supervisors for infringing his first amendment rights in a dispute arising out of his employment relationship.
 
 IV. CONCLUSION
 
 41
 For the reasons discussed above, we affirm the district court's ruling that the BHA violated the ADEA and its dismissal of Krodel's Bivens action.
 
 
 42
 Affirmed.
 
 
 
 [1]
 Although Krodel originally appealed the district court's ruling on the availability of attorney's fees for representation in prior administrative proceedings, he has now conceded that the issue is not properly before the court at this time. See Brief for Appellee/Cross-Appellant at 35. see also Krodel v. Young, 576 F.Supp. 390 (D.D.C. 1983) (awarding fees)
 
 
 [2]
 See Bivens v. Six Unknown Named Fed. Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (allowing the recovery of damages for fourth amendment violations by individual federal officials acting in their official capacity); see also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (same under the eighth amendment); Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (fifth amendment); Dellums v. Powell, 566 F.2d 167 (D.C.Cir.1977) (first amendment), cert. denied, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978)
 
 
 [3]
 The district court also interpreted Krodel's complaint to allege that the BHA had retaliated against him for filing prior age discrimination complaints. See Constitutional Opinion at 2-3. The court concluded that the ADEA provided him with an adequate and exclusive remedy for all such claims. See id. at 3. Finally, the district court held that Krodel had no property interest in being promoted, id. at 3 n. 1, and that the ADEA constituted an exclusive remedy for any other claims that the BHA denied him due process in its promotion decisions. Id. at 3. Krodel does not challenge these rulings on appeal
 
 
 [4]
 In his Aikens concurrence, Justice Blackmun expressly reaffirmed a discrimination plaintiff's ability to meet his or her ultimate burden by discrediting the employer's legitimate, non-discriminatory explanation
 Th[e] ultimate burden may be met in one of two ways. First, as the Court notes, a plaintiff may persuade the court that the employment decision more likely than not was motivated by a discriminatory reason.... In addition, however, this burden is also carried if the plaintiff shows "that the employer's proffered explanation is unworthy of credence." While the Court is correct that the ultimate determination of factual liability in discrimination cases should be no different from that in other types of civil suits, the McDonnell Douglas framework requires that a plaintiff prevail when at the third stage of a Title VII trial he demonstrates that the legitimate, nondiscriminatory reason given by the employer is in fact not the true reason for the employment decision.
 Aikens, 103 S.Ct. at 1483 (Blackmun, J., concurring) (citations omitted).
 
 
 [5]
 In Burdine, the court also suggested that a plaintiff need not always come forward with any additional evidence after discrediting the defendant's proffered justifications:
 A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
 Burdine, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10; see Segar, 738 F.2d at 1269. In this case, of course, Krodel offered additional evidence of age discrimination within the BHA. See infra pp. 708-11. We are thus not squarely presented with the question of whether a discrimination plaintiff can prevail solely on the strength of his or her prima facie case coupled with an effective rebuttal of the employer's explanation.
 
 
 [6]
 Both Krodel and the plaintiff in Bush were covered by the collection of statutes, executive orders and regulations that preceded the Civil Service Reform Act (CSRA) of 1978, Pub.L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.). See Bush, 103 S.Ct. at 2416. As a member of the pre-CSRA competitive civil service, Krodel was thus in a different position than the appellants in Borrell v. United States International Communications Agency, 682 F.2d 981 (D.C.Cir. 1982), and Williams v. IRS, 745 F.2d 702 (D.C.Cir.1984), who were governed by the CSRA. Those employees could not seek direct judicial review of a prohibited personnel practice not amounting to an adverse action; instead, their only statutory remedy was an essentially discretionary and unreviewable petition to the Office of the Special Counsel. See Williams, at 704-05