**Samuel MOORE, Jr., Plaintiff,**

v.

**Togo D. WEST, Jr., Secretary of the Army, Defendant.**

**Civil Action No. 92–818 SSH.**

United States District Court, District of Columbia.

Jan. 9, 1998.

---

Sol Rozen, Washington, DC, for Plaintiff.

Assistant U.S. Attorney Wyneva Johnson, U.S. Attorney's Office, Washington, DC, for Defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Plaintiff alleges that defendant discriminated against him on the basis of his age and race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA").[1]

By a September 30, 1994, Memorandum Order, the Court denied the parties' cross-motions for summary judgment.[2] The Court stated:

> [G]enuine issues of material fact preclude the entry of summary judgment for either side. First, there is a material dispute over whether plaintiff has established a prima facie case: (1) the evidence is disputed as to whether Almazan was aware of plaintiff's race and age when she made her first recommendation not to hire him, and (2) there is a material dispute over whether plaintiff was qualified for the job. Defendant contends that plaintiff was not qualified primarily because he lacked recent clinical experience with humans. However, Walter Reed's official job description for the position, which was approved by Almazan, does not list clinical experience as a requirement for the job. Yet such a requirement could be inferred from the duties listed in the job description, or from custom in the field . . . .
>
> Defendant contends that, assuming plaintiff has established a prima facie case, it still is entitled to summary judgment because it has come forward with a legitimate nondiscriminatory reason for not hiring plaintiff—lack of recent clinical experience with humans. Again, this issue is

intertwined with the issue of whether plaintiff was qualified for the job.

Mem. Order at 6 (internal citation omitted).

The Court held a two-day bench trial. This Opinion sets forth the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a). Based on the credible evidence presented at trial, the Court concludes that defendant did not discriminate against plaintiff.

## Findings of Fact

The Walter Reed Army Medical Center ("WRAMC") is a nationally-known facility, a reference center, and the United States Army's largest hospital. Its microbiology and infectious disease department is one of the most prestigious in the United States. Because of the complexity of its work and its use of cutting-edge procedures, entry level medical technologists need to be highly skilled. Each technologist must be able to perform all of the complex microbiological procedures that are done in the lab, must be able to work independently, and must be able to complete certain tasks within a specified amount of time.

In August 1987, plaintiff, a black male then in his mid-fifties, was certified by the Office of Personnel and Management ("OPM") as an eligible candidate for a GS–644–09 Medical Technologist vacancy in the Clinical Microbiology Laboratory Section in the Department of Pathology at the WRAMC. On September 30, 1987, Rebecca Almazan, a 52–year–old Hispanic female and the supervisor of that section, reviewed plaintiff's Form 171 application (the "171").

On the 171, plaintiff indicated that his most recent position was at the Department of Natural Resources, an environmental health and marine biology institute, where he had worked since 1985. According to that form, plaintiff was a supervisor, manager, and tech-

---

**1.** Plaintiff also alleges violations of the Rehabilitation Act of 1973–1974, the Veterans Readjustment Assistance Act of 1974, and the Veterans Preference Act of 1944, as amended, cursorily, and without citation to the statutes, in his proposed findings. *See* Plaintiff's Proposed Findings at 1. These claims are not properly before the Court, as plaintiff never amended his complaint to include them.

**2.** The Court did, however, grant defendant's motion to dismiss plaintiff's compensatory, liquidated, and punitive damages claims.

nical advisor in marine biology. His responsibilities included analyzing histological tissue samples of marine biotic life, managing and supervising the handling and disposal of hazardous waste, interpreting micro-pathogens in aquatic tissue, maintaining administrative records of test results and procedures, maintaining the efficient operation of the laboratory, assisting in defining various diseases of marine life, and assisting in defining water quality relevant to diseases prevalent in finfish or shellfish. Thus, plaintiff's 171 showed that his most recent employment was as a supervisor and manager of a marine biology laboratory; all the microbiology plaintiff performed in this position was related to marine biology, and was different from the bench-level work required at the WRAMC.

The next position was described by plaintiff as health advisor in health education to middle and secondary schools for the Howard County School System. The written description of this position also did not indicate clinical microbiological experience.

The third position listed was "Administrator Head" of the University of Maryland Hospital; plaintiff was at that job from 1974 until 1982. In this capacity, plaintiff supervised 120 employees and served as a faculty member. He managed all administrative responsibilities for a clinical laboratory. Almazan concluded that, while plaintiff might have had some bench experience in that capacity, he was primarily an administrator.

Upon review of plaintiff's 171, Almazan concluded that there was no indication that plaintiff had had clinical experience in microbiology since 1974, when he was last with the United States Air Force. Almazan consequently recommended to the Head of Pathology, Colonel Gary Clark, that plaintiff be rejected on the grounds that he had inadequate clinical experience, and that his knowledge of microbiology was outdated. At that time, Almazan was unaware of plaintiff's race.

After plaintiff's non-selection, Almazan was asked to review the 171 of an applicant from the Handicapped Individual Program, Penny Brown, a 28–year–old severely disabled white female.[3] Her 171 indicated strong academic achievement and significant clinical experience in microbiology. Brown had worked at a number of different laboratories; her most recent work experience was as a microbiologist at Johns Hopkins, which has the premiere microbiology laboratory in the United States, for a year. She had approximately five years of experience as a medical technologist. Almazan selected Brown for one of the positions.

Approximately one week later, Almazan was given plaintiff's 171. She stated that she had already non-selected plaintiff, but the Civilian Personnel Office ("CPO") nonetheless instructed her to interview plaintiff. Almazan called plaintiff to schedule an interview. She told plaintiff that she had contacted his last place of employment and had been told that he no longer worked there. Plaintiff said that he would bring a copy of his resumé to the interview.

Almazan and Dr. Maria Rueda–Pedraza, a 47–year–old Hispanic female and the Medical Director of the laboratory, interviewed plaintiff on October 22, 1987.[4] At the interview, Almazan and plaintiff discussed his then-current job. Plaintiff referred to that job as teaching at "Georgetown"; after further questioning, plaintiff stated that he was teaching at the Georgetown School of Allied Arts. Plaintiff told Almazan that he was teaching microbiology. He explained that he taught students to work with plate media, to inoculate organisms, to do gram stains of what had grown, and to do some urine tests. These procedures, which are the most basic procedures done in a microbiology lab, and which are generally done by laboratory aides, are not the current clinical methodology practiced at the bench level at the microbiology and infectious disease department at the WRAMC. Almazan concluded that plaintiff's students were being trained as laboratory aides, rather than as medical technicians.

---

**3.** According to Almazan, there were four vacancies to be filled; consequently, plaintiff and Brown were not competing for the same position.

**4.** Rueda–Pedraza was present for only part of the interview.

Almazan asked plaintiff a number of technical questions in order to determine his level of knowledge about current microbiology techniques. Plaintiff's answers indicated that he was outdated in his knowledge of current methodologies. For example, in response to a question about how to process an eye specimen for anaerobic organisms, plaintiff answered that he would take a blood plate and work it up; the correct answer was that it is never appropriate to do an anaerobic culture of an eye specimen. In response to a question about a sputum culture, plaintiff neglected to mention that he would have to determine whether the specimen is pulmonary material or oral saliva. Plaintiff also gave incorrect answers to a question about plating a spinal fluid culture and a question about working up stool samples.

Almazan then brought plaintiff into the laboratory to ask him some questions about biochemical tubes that were waiting to be identified, to see if he had an understanding of the biochemical reactions, and to have him pick up some of the media and identify the organism. Plaintiff, however, said that he did not have time and had to leave.

After the interview, Almazan reviewed plaintiff's resumé, which he had brought to the interview. The resumé did not indicate that plaintiff had current clinical microbiology experience.[5] Moreover, the resumé stated that his objective was a managerial, administrative position.

Almazan adhered to her original recommendation that plaintiff should not be hired.

Brown was hired, and she resigned after approximately three months for medical reasons.

By letter dated May 26, 1988, the WRAMC informed plaintiff that it had requested permission from the OPM to reject his application.[6] Plaintiff received a follow-up letter on June 27 (dated June 21) advising him that he could submit proposed objections. On July 27, plaintiff filed an informal complaint with the EEO counselor at the WRAMC. On November 2, the OPM denied the WRAMC's request to pass over plaintiff, and the EEO counsel subsequently recommended that the WRAMC offer plaintiff a position, which it declined to do. Plaintiff's case proceeded through the administrative process, and a final agency decision finding no discrimination was issued on February 26, 1992. Plaintiff subsequently filed the instant action.

*Conclusions of Law*

Plaintiff alleges that defendant discriminated against him in violation of Title VII and the ADEA. To establish a prima facie case under Title VII, plaintiff must show that: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was not selected; and (4) the position remained open and the employer continued to seek applicants with qualifications equal to the plaintiff's. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The burden then shifts to the defendant to rebut the presump-

5. At the trial, William Wilson testified that plaintiff performed clinical bench work at his microbiology laboratory in 1975. This job, however, was not listed on plaintiff's 171 or resumé. Moreover, that experience occurred 12 years prior to plaintiff's application to the WRAMC.

6. Doris Knight, a Personnel and Management Specialist at the WRAMC, testified that the CPO erroneously believed that it needed permission from the OPM in order to pass over plaintiff. 5 U.S.C. § 3318 provides in relevant part:

(a) The nominating or appointing authority shall select for appointment to each vacancy from the highest three eligibles available for appointment on the certificate furnished under section 3317(a) of this title, unless objection to one or more of the individuals certified is made to, and sustained by, the Office of Personnel Management for proper and adequate

reason under regulations prescribed by the Office.

(b)(1) If an appointing authority proposes to pass over a preference eligible on a certificate in order to select an individual who is not a preference eligible, such authority shall file written reasons with the Office for passing over the preference eligible....

Knight explained that the need to seek permission from the OPM is triggered only when three eligibles have been listed. Where, as here, only one eligible candidate is listed, the nonselection of that candidate is not considered a "pass over." The Court credits this testimony. The Court also observes, in any event, that even if the WRAMC had improperly failed to follow OPM procedures, such evidence would not establish that defendant intentionally discriminated against plaintiff.

tion of discrimination by coming forward with a legitimate nondiscriminatory reason for the adverse employment action, which eliminates the presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Then, the plaintiff bears the burden of demonstrating that the asserted reason is false and a pretext for discrimination. *Id.* at 1095. The same tripartite evidentiary framework is applied to actions brought under the ADEA. *Krodel v. Young,* 748 F.2d 701, 705 (D.C.Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985).

Here, the Court concludes that plaintiff has not established even a prima facie case of discrimination. There was overwhelming evidence at trial that plaintiff was not qualified to be a medical technologist at the microbiology and infectious disease lab at the WRAMC.[7] Plaintiff's 171 and resumé indicated that he lacked even relatively current microbiological bench experience. At his interview, plaintiff did not give the correct answers to questions designed to elicit his understanding of the field, and plaintiff refused to demonstrate his knowledge at the bench. Moreover, the evidence at trial did not show that Brown, who ultimately was hired, had qualifications similar to plaintiff's. Brown had a distinguished academic record and significant current experience as a microbiological technologist.[8] Moreover, the Court observes that the evidence at trial established that Brown and plaintiff were not competing for the same position, as there were four vacancies that needed to be filled.

Assuming *arguendo* that plaintiff established a prima facie case, defendant has produced convincing evidence that the adverse employment action was taken for legitimate nondiscriminatory reasons—plaintiff's lack of current microbiological bench experience. Plaintiff has failed to prove that this reason was false or a pretext for an illegitimate motive. Accordingly, the Court concludes that plaintiff was nonselected because he was not qualified for the position, and not because he was discriminated against on account of his age or race.

### Conclusion

Upon consideration of the foregoing, judgment is entered for defendant on all of plaintiff's claims. An appropriate Judgment accompanies this Opinion.

### JUDGMENT

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that judgment is granted to defendant on all of plaintiff's claims.

SO ORDERED.

---

**7.** Although the official job description for the position, which was approved by Almazan, does not list clinical experience as a requirement for the job, the Court concludes that such a requirement should properly be inferred from the duties listed in the job description and from custom in the field.

**8.** The fact that Brown was declared "ineligible" by the OPM because of her inability to lift more than 15–20 pounds is not relevant.