**Davie L. PAICE, Plaintiff,**

v.

**MARYLAND RACING COMMISSION, et al., Defendants.**

**Civ. A. No. J–81–2379.**

United States District Court, D. Maryland.

May 17, 1982.

Allen L. Schwait, Baltimore, Md., Jerome Fink, Herbert L. Awe, Washington, D. C., for plaintiff.

Allan M. Foreman, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Plaintiff, Dr. Davie L. Paice, dismissed as chief veterinarian of the Maryland Racing Commission, brings this action under 42 U.S.C. § 1983 and state law, challenging that dismissal by the defendants, Maryland Racing Commission (Commission) and the individual Commissioners. Defendants have moved to dismiss the complaint, or alternatively for summary judgment. A hearing was held on defendants' motion on February 19, 1982. The Court now concludes that plaintiff possessed no cognizable property interest in continued employment, but that there is a genuine issue of material fact on the issue of whether the firing of plaintiff and the resulting publicity deprived plaintiff of his right to liberty without due process of law. The Court also concludes that the Commission did not violate its own procedures in failing to give plaintiff a pretermination hearing, as alleged in Count Three of the complaint.

Plaintiff had been employed as a veterinarian by the Commission in 1959, and as chief veterinarian since 1963. He had always been employed on a per diem basis without a written contract, although he had received letters from the Commission until 1969 or 1970, appointing him as veterinarian or chief veterinarian for the racing year. On June 18, 1981, he was dismissed, effective that date, although he was paid through July 20, 1981, the last day of the then current racing meet. No reasons were given to plaintiff for the dismissal. However, the complaint alleges that "a member or members of the Commission at the time and place of the meeting left one or more members of the press with the belief that there was a connection between plaintiff's firing and an alleged failure to observe working hours."

Plaintiff's first claim is that he had a property interest in his continued employment and that his summary dismissal deprived him of his right to that property interest without due process of law. To assert a property interest that is protected by the Fourteenth Amendment, plaintiff must demonstrate more than a unilateral expectation of continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The sufficiency of a claim to entitlement must be determined with reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In the absence of an express contractual guarantee for continued employment, a property interest in employment must be shown by rules or mutually explicit understandings that support a claim of entitlement to continued employment. *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

Defendants argue that summary judgment is appropriate because plaintiff has presented insufficient evidence that they provided him with any assurance of continued employment beyond the current racing meet, and because art. 78B, § 4 of the Maryland Annotated Code provides that employees such as plaintiff serve at the pleasure of the Commission. The Court agrees with both contentions.

Plaintiff concedes that he had no express contractual guarantee for continued employment. Indeed, he was working without a written contract at all when he was discharged. Instead, plaintiff relies on several factors to support his claim of a property interest in continued employment: (1) the longevity of his employment with the Commission; (2) representations made by the Commission when he was recruited to work as a veterinarian; (3) letters he received in the early years of his employment stating that he had been appointed "for the year,"

and (4) provisions of the Commission's Rules of Thoroughbred Racing that provide for hearings before disciplinary or punitive action may be taken for violations of the rules of racing.

 Standing alone, longevity of employment cannot form the basis of an entitlement to continued employment. *McNeill v. Butz*, 480 F.2d 314, 320 (4th Cir. 1973). Nor is the Court persuaded that the alleged representations made to plaintiff when he was initially hired as to the anticipated duration of his employment with the Commission create a reasonable inference that there was a mutually expressed understanding that *in 1981* plaintiff would not be terminated without cause before the end of the year. Plaintiff states in his affidavit that representations were made to him when he was recruited as a Commission veterinarian to the effect that the Commission was looking for a man "who intends to stay with us" for an extended period. Such vague "representations" establish nothing more than the Commission's desire that the employment relationship would be mutually satisfactory and continuing. It does not indicate an assurance that the Commission would retain plaintiff's services for a specified period. Significantly, plaintiff does not allege that any similar representations were made subsequent to his initial hiring.

 Similarly, the fact that plaintiff was sent letters in his early years with the Commission stating that he was appointed for the year does not warrant a conclusion that he had an implied contract for one year with the Commission when he was discharged in 1981. Paice received appointment letters through 1967, and possibly one or two years thereafter. Since that time, he has reported for work without an appointment letter or any other communication, formal or informal, from the Commission. (Paice affidavit). He does not allege that any representations or other communications have been made to him by members of the Commission about his employment status since he received the last appointment letter over a decade ago. The affidavit of James A. Callahan, the Executive

Secretary of the Maryland Racing Commission, states that plaintiff was appointed for the duration of the current race meeting only. Moreover, the interpretation of the Commission that plaintiff was employed for the duration of the meet only is supported by the language of the statutory and regulatory provisions authorizing the Commission to employ veterinarians, which state: "the Commission is authorized to employ . . . veterinarians . . . deemed to be essential at or in connection with any racing meeting. . . ." Md.Ann.Code, Art. 78B, § 5 (1980); C.Md.R. 09.10.01.08J. The regulations further state that "[a] board of veterinarians, consisting of a chief veterinarian, and such other veterinarians as the Commission may deem necessary shall be designated for duty *at each Maryland track.*" C.Md.R. 09.10.01.47A (emphasis added). Since plaintiff does not allege any oral or written representations by the Commission concerning his employment status subsequent to his receipt of the last appointment letter more than ten years ago, this Court must conclude that there is insufficient evidence of any mutually explicit understanding that his contract with the Commission at the time he was fired was for the racing year.

Finally, plaintiff argues that his duties and conduct as chief veterinarian were governed by the Maryland rules of racing, and that as a consequence, he was entitled to notice and a hearing before he could be discharged pursuant to C.Md.R. 09.10.01.10, whatever the duration of his employment contract might have been. That provision requires the Commission to conduct a hearing "[w]henever it appears to the Commission that disciplinary or punitive action should be taken against any person for violation of the rules of racing. . . ."

At the hearing conducted on defendants' motion, plaintiff argued that he was discharged by the Commission on the basis of accusations which could be understood as charging him with dishonesty. Therefore, he concludes that he was entitled to a pretermination hearing since the charges against him could state a violation of

C.Md.R. 09.10.01.36, which provides: "All officials at any track shall conduct themselves at all times with complete integrity. They shall receive no remuneration, other than salary, for the proper performance of their duties." [1]

In response, defendants rely upon the affidavit of James Callahan, who states that the rules of racing are rules designed to insure that horse racing is conducted fairly. They prescribe the conditions under which races are to be conducted, and delineate the responsibilities and obligations of licensees. He further states that they have no application to the personnel practices of the Commission. In the twenty-two years he has been Executive Secretary of the Maryland Racing Commission, the Commission has never given employees, such as plaintiff, pretermination hearings. Finally, the affidavit states that the Commission has interpreted the hearing provisions of C.Md.R. 09.10.01.10 as applying to licensees of the Commission only. Plaintiff has submitted no evidentiary material, other than his stated belief that he would receive a hearing, to controvert these allegations.

 The legal conclusions expressed by Mr. Callahan in his affidavit are, of course, not dispositive of the issue of the proper interpretation of the statutory and regulatory provisions governing the employment relationship between plaintiff and defendants; nevertheless, he is competent to state the practice of the Commission in interpreting the regulations governed by the Commission, and the longstanding interpretation of those regulations by the Commission is entitled to deference by this Court. *Mules v. Maryland Racing Commission,* 30 Md.App. 533, 353 A.2d 664 (1976). More important, that interpretation of C.Md.R. 09.10.01.10 is more consistent with the overall regulatory framework established by Title 9, Subtitle 10 of the Code of Maryland Regulations, C.Md.R. 09.10.01.01, *et seq.* (Rules of Thoroughbred Racing) for the

conduct of racing meetings than the interpretation urged by plaintiff. For the most part, the Rules of Thoroughbred Racing regulate the operation of racing meetings in general and individual horse races in particular, and set forth the duties and responsibilities of licensees of the Commission. To the extent the regulations govern the conduct of employees of the Commission, it is to describe their duties with respect to the conduct of racing meetings, and to prohibit conduct that could be perceived as being inconsistent with their role as impartial racing officials. That the Racing Commission regulations are primarily intended to govern the conduct of licensees is made clear by C.Md.R. 09.10.01.08A, which provides, in pertinent part: "It shall be the duty *of every licensee* of the Commission and the officers, officials, and employees *of the licensee* to observe these rules of racing and the regulations adopted by the Commission...." (emphasis added). There are no comparable provisions for employees of the Commission. In distinguishing between the rules of racing and the regulations of the Commission, that provision also indicates that the hearing provisions enunciated in C.Md.R. 09.10.01.10 for violations of the rules of racing did not contemplate that hearings would be provided to all persons accused of violating any of the regulations that appear in Subtitle 10. Had the Commission intended that its employees be provided with hearings whenever disciplinary action was taken against them for allegedly failing to conduct themselves with integrity, the Commission could have so provided, as it expressly did for violations of other regulatory provisions, *e.g.,* C.Md.R. 09.10.-01.47I (Commission veterinarian entitled to hearing before Commission may take disciplinary action against him for receiving compensation for treating horse on the grounds or registered to race at any race track.) C.Md.R. 09.10.01.36 contains no

---

1. Defendants stated the reason that they allege plaintiff was discharged in their answers to interrogatories. At defendants' request, those answers have been filed under seal. For purposes of this motion, the Court will accept plaintiff's claim that defendants discharged him for reasons which could be interpreted as accusing him of failing to conduct himself with complete integrity.

such hearing provision. Therefore, plaintiff's reliance upon the Rules of Thoroughbred Racing as support for his claim of entitlement to a pretermination hearing must fail.

 Even if there was evidence of a mutual understanding that plaintiff was to serve the Commission in a capacity other than as an at will employee, that agreement would be unenforceable. By statute, all officers, experts and inspectors appointed by the Commission, as opposed to the secretary, clerks and stenographers who are members of the state merit system, serve "during the pleasure of the Commission." Md.Ann.Code, Art. 78B § 4 (1980).[2] Employees who serve during the pleasure of their employers are at will employees, and have no property interest in continued employment. *Carson v. Russell*, 602 F.2d 714 (5th Cir. 1979). That provision is absolute and cannot be bargained away by the Commission. It is written into all contracts. *See Patterson v. Ramsey*, 413 F.Supp. 523 (D.Md.1976).

 Plaintiff contends that § 4 does not apply to him because the position of veterinarian is not specifically listed in that section, whereas the term veterinarian does appear in the following section which also enumerates the persons who may be employed by the Commission without specifying their employment status.[3] He concludes that these "additional employees" listed in § 5 are different from the officers, inspectors, and experts described in § 4 and, therefore, do not serve during the pleasure of the Commission. However, that interpretation derives no support from the language of the two statutes. Where two provisions of an act appear to be inconsistent or contradictory, it is the duty of the Court to endeavor to reconcile them so as to effectuate legislative purpose. *Maryland Indus. Development Financing Authority v. Meadowcroft*, 243 Md. 515, 221 A.2d 632 (1966). To read the provision of § 5 referring to additional employees as creating a third and distinct class of employees separate from the employees listed in § 4 would require the Court to construe the words "inspectors" and "experts" as referring to one group of employees in § 4, and a different group of employees in § 5. Both sections differentiate between the clerical support staff on the one hand (the secretary, clerks and stenographers) and the officials more directly involved with the conduct of the racing meeting on the other hand. That § 4 specifies general categories of employees (officers, inspectors and experts) as opposed to the more specific description of the employees in § 5 does not mean that the two groupings are mutually exclusive. Moreover, to construe "officer" as that term is used in § 4 as including the chief veterinarian is consistent with one of the primary purposes of Article 78B, to create a Racing Commission and to invest that Commission with broad powers to regulate all matters pertaining to horse races, in order that they be conducted fairly, decently and clearly. *Jacobson v. Maryland Racing Commission*, 261 Md. 180, 274 A.2d 102 (1971). The motion to dismiss Count One of the complaint will be granted.

 Plaintiff also claims in Count Two of his complaint that the circumstances under which he was dismissed, in which one or

**2.** Maryland Annotated Code, Article 78B, § 4 (1980) provides in pertinent part:
... The Commission may appoint such officers, inspectors and experts as may be necessary who shall serve during the pleasure of the Commission and may appoint a secretary and such clerks and stenographers as may be necessary, who shall be members of the merit system.

**3.** Maryland Code Annotated, Article 78B § 5 (1980) provides in pertinent part:
... The salaries of the Commission, of its secretary and of its stenographers and clerks shall be as in the budget provided. In addition to the employees of the Commission, whose salaries are provided for in the budget, the Commission is authorized to employ at reasonable compensation, a reasonable number of inspectors, guards, experts, scientists, auditors, veterinarians, and other employees or agents deemed by the Commission to be essential at or in connection with any race meeting to the best interests of racing (hereinafter referred to as "additional employees,") ....

more defendants led members of the media to believe (and presumably publish) that he had been fired for failure to observe working hours violated his right to liberty without due process of law. To implicate a liberty interest, the state must (1) make charges against the employee which might seriously damage his standing and associations in his community, as for example, accusations of dishonesty, disloyalty, or immorality; or (2) the dismissal must impose a stigma or other disability which forecloses a discharged employee's freedom to take advantage of other employment opportunities. *McNeill v. Butz*, 480 F.2d 314 (4th Cir. 1973).

Plaintiff alleges that the charge of failure to observe working hours could be understood by the public to mean that he was dishonest in that he accepted pay for time in which he was absent from work, and that his termination "has had and will have a profound effect on [his] future earnings and [his] ability to practice [his] profession successfully." (Paice affidavit). Although the Commission awarded plaintiff a veterinarian's license subsequent to his termination as chief veterinarian of the Commission, the record is silent as to whether plaintiff subsequently obtained employment as a veterinarian. In addition, neither plaintiff nor defendants have submitted the media report or reports that allegedly impugned plaintiff's character for honesty. Thus, this Court is unable to determine, on the present state of the record, the content of what was communicated to the public about plaintiff's discharge, the context within which the charges were published, the interpretation and conclusions reached by the public as a result of the publicity, or the effect that the alleged statements by members of the Commission may have had on plaintiff's ability to secure future employment. The Court cannot say, on the present state of the record, that the statements allegedly made by members of the Commission could not, as a matter of law, implicate a liberty interest protected by the Fourteenth Amendment. Accordingly, the motion to dismiss Count Two of the complaint will be denied.

Count Three of the complaint alleges that the Commission violated its own procedures as set forth in the Rules of Thoroughbred Racing, C.Md.R. 09.10.01 *et seq.*, in failing to provide plaintiff with a pretermination hearing. As previously discussed, the hearing provisions of those regulations are not applicable to the facts of this case. Therefore, the motion to dismiss Count Three will be granted.