**Leo ROSENGARTEN, Plaintiff,**

v.

**J.C. PENNEY COMPANY, INC., Defendant.**

**No. 81 CV 3567.**

United States District Court, E.D. New York.

March 21, 1985.

Legal Services for Elderly in Queens Rego Park, N.Y. by Marc Finkelstein, New York City, for plaintiff.

Piper & Marbury by Walter B. Connolly, Jr., Steven C. Kahn, Washington, D.C., LeRoy Watkins, J.C. Penney Co., Inc., New York City, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff brings this discrimination action under the Age Discrimination in Employment Act of 1967, as amended, (the "ADEA"), 29 U.S.C. §§ 621–634, because he was demoted and his salary was reduced. Plaintiff is now seventy years old, and at all times relevant to this action was within the age group protected by the ADEA. A one-day trial was conducted, without a jury, on November 15, 1984. Both sides have submitted briefs, and have furnished proposed Findings of Fact and Conclusions of Law. For the reasons developed below, judgment will be entered for the defendant.

### Findings of Fact

On July 19, 1948, plaintiff began his career with J.C. Penney as an architectural draftsman in defendant's Stores and Facilities Construction Planning Department. Twenty years later he had risen to the first-level management position of architectural squad leader. The duties of a squad leader normally entail supervising the preparation of architectural drawings for the company's stores and facilities. Plaintiff's initial responsibility as a squad leader, however, was to ensure that retail store signs were properly delivered and installed.

Defendant contends that, although plaintiff was *paid* as a squad leader, he never actually *performed* supervisory functions and was not regarded as a squad leader by management. Plaintiff, on the other hand, claims that no one ever told him that he was not doing squad leader work. Indeed, plaintiff testified that he received only one negative performance evaluation in the thirty-one years prior to his demotion and that evaluation was in 1974. In any event, in January 1974, the functions plaintiff had been performing were reassigned to the project coordinator in charge of architectural drawings.

Plaintiff was assigned to work for a short time under the supervision of another squad leader. Then, in August 1975, he was assigned to serve as an assistant to the Chief Construction Engineer. Plaintiff held this position until November 1, 1979, the date of his demotion. His duties in this position were largely clerical and non-supervisory, and included performing routine cost calculations and drafting functions, checking store leases to ensure conformance with a checklist of requirements, and reviewing files to identify contractors supplying defective roofing materials. Defendant concedes that plaintiff performed these duties satisfactorily and received average salary increases.

On November 1, 1979, the company implemented a reduction in force in the Stores and Facilities Construction Planning Department. The layoffs and demotions that followed were attributable to a reduction in the anticipated expansion of new stores from over six million square feet to approximately three million square feet. Selections for layoffs and demotions were based on an evaluation of the necessity of the functions and the level of performance of the individual employees.

Plaintiff's position was among those eliminated as part of the reduction in force. Accordingly, plaintiff's supervisors recommended that plaintiff's employment be terminated. Ironically, if this recommendation had been implemented it is unlikely that the instant litigation would have ensued. Although the recommendation was initially accepted, management later determined that, in lieu of termination, plaintiff would be demoted. Accordingly, on November 1, 1979, plaintiff was given four

hours notice that his position was being eliminated and that he was being demoted to a Grade 6 architectural draftsman with a reduction in salary.[1] No action was taken by the company regarding the employment or pay status of the other five squad leaders, all of whom are younger than plaintiff—and therein lies the rub.

Approximately six months after his demotion, plaintiff was promoted to a Grade 8 draftsman and given a ten percent salary increase.[2] Subsequent appraisals indicated that plaintiff continued to perform satisfactorily at the Grade 8 level. Defendant contends that plaintiff was placed on a "fast track" for salary review so that his salary at the time of his voluntary retirement on March 31, 1983 approximated the level it had reached at the time of his demotion. Plaintiff places a more sinister interpretation upon his recent good fortune. He contends that his promotion and escalated salary increases occurred only after he filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On December 2, 1980, the EEOC decided not to pursue plaintiff's charge. The present action was commenced on October 30, 1981.

### Discussion

Section 623(a)(1) of the ADEA makes it unlawful for an employer "to discharge ... or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA provides further, however, that "it shall not be unlawful ... to take any action otherwise prohibited ... where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1).

■ Once plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to advance a nondis-criminatory justification for the challenged employment decision. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The burden of persuasion, however, remains at all times with the plaintiff. *Id.* at 254, 101 S.Ct. at 1094. Thus, once the defendant satisfies its limited burden of articulating a non-discriminatory justification for its action, the plaintiff must prove that the proffered justification is pretextual. *Id.* at 257, 101 S.Ct. at 1095; *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978).

Plaintiff seeks recovery under a disparate treatment theory, claiming that his demotion and salary reduction were motivated by his age and by defendant's intention to force him into retirement. In order to establish a claim under a disparate treatment theory, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1857 n. 15, 52 L.Ed.2d 396 (1977). The Second Circuit, in a case involving an allegedly discriminatory discharge, framed the plaintiff's burden as follows:

> The plaintiff has the burden of proving that "age was the 'determining factor' in his discharge in the sense that, 'but for' his employer's motive to discriminate against him because of age, he would not have been discharged."

*Pena v. Brattleboro Retreat*, 702 F.2d 322, 223 (2d Cir.1983). (quotations omitted).

■ Defendant has proffered a legitimate business justification for its actions, *viz*, that plaintiff's demotion and corresponding reduction in pay were part of a widespread staff reduction. Plaintiff does not—and cannot—dispute that unfavorable economic conditions required a general reduction in defendant's work force. Plain-

---

1. Plaintiff's salary was reduced by approximately $6,000 from $20,871 to $14,924.

2. Essentially, a Grade 6 draftsman assists in the preparation of sketches and standard details and requires constant supervision. A Grade 8 draftsman, in contrast, develops sketches and standard details with minimum supervision.

tiff alleges, however, that his demotion was nonetheless motivated by age.

Obviously, the existence of a reduction in force scenario does not remove defendant's actions from the scrutiny of the ADEA. *See Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 81 (2d Cir.1983); *Williams v. General Motors Corp.*, 656 F.2d 120, 128 (5th Cir.1981). On the other hand, the courts have placed greater emphasis on the requirement that plaintiff prove intent to discriminate where, as here, the employer's action occurred in the context of a reduction in force. *See, e.g., Williams*, 656 F.2d at 129; *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 343 (D.C.Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). It is clear that plaintiff has not met this burden.

Having reviewed the entire record in this case, I conclude, initially, that the elimination of plaintiff's position was not motivated by age. Plaintiff's job functions were largely clerical and non-supervisory and, thus could be assumed by other employees with minimal disruption. The elimination of his position was appropriate in the context of a widespread staff reduction. Defendant was not obligated to retain plaintiff's position just because he is within the protected age class. As the Fifth Circuit has stated:

> The ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group.

*Williams*, 656 F.2d at 129.

Likewise, having eliminated plaintiff's position, defendant was not obligated to create another position for plaintiff. *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 920 (2d Cir.1981). Accordingly, as noted earlier, defendant could justifiably have terminated plaintiff's employment.

██ In lieu of termination, however, defendant elected to demote plaintiff with a corresponding salary reduction. Plaintiff contends that this disparate treatment was, in fact, a discriminatory attempt to force plaintiff into early retirement. He has not, however, demonstrated this. "The essence of a complaint ... under the ADEA is that the plaintiff has been treated *less* favorably than others on account of his age." *Stanojev*, 643 F.2d at 923 (emphasis added). Again, he has failed to demonstrate that he was treated less favorably than he should have been.

It is also significant that plaintiff has failed to establish that there were any other positions available for which he was qualified. Since plaintiff had not performed the traditional duties of a draftsman for quite some time, the company managers were justifiably uncertain as to plaintiff's ability to function at the unsupervised level. It is the perception of the decision-maker, and not that of the plaintiff himself, which is relevant. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). In any event, defendant's managers testified that, despite their uncertainties, they examined whether there were any available positions at the squad leader or grade 8 draftsman levels. They concluded there were not.

Accordingly, defendant elected to demote plaintiff to the level of Grade 6 draftsman and to reduce plaintiff's salary to the starting salary at that level. Given plaintiff's thirty-one years of employment with the company, defendant's actions seem callous and shortsighted. Indeed, plaintiff testified that, in hindsight, he might have preferred being terminated, rather than demoted. Nonetheless, as the courts have recognized:

> There is no burden upon an employer of proving that a particular employment decision affecting the employee was a matter of sound business judgment. An employer may hire or fire/demote or promote any employee on the basis of purely subjective reasons, even if such reason is shortsighted or narrowminded, as long as age is not a determinative factor in that decision.

*Miller v. General Electric Company*, 562 F.Supp. 610, 617 (E.D.Pa.1983). *See Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d

158

Cir.1984); *Stanojev,* 643 F.2d at 922. It is telling that, upon realizing plaintiff's displeasure with their actions, management gave him the option of being terminated with accompanying unemployment benefits. Plaintiff elected to continue working.

In short, plaintiff simply has not sustained his burden of proving that age was a determinative factor in his demotion. *Hagelthorn,* 710 F.2d at 86; *Bentley v. Stromberg-Carlson Corp.,* 638 F.2d 9, 10 (2d Cir.1981).

Accordingly, judgment will be entered for the defendant.

SO ORDERED.