Douglas P. SMITH, Plaintiff,

v.

CHAMBER OF COMMERCE OF the UNITED STATES of America, Defendant.

Civ. A. No. 84–512.

United States District Court, District of Columbia.

Sept. 25, 1986.

Jack L. Gould, Fairfax, Va., for plaintiff.

Alan S. Weitz, Ira T. Kasdan, Ginsburg, Feldman & Bress, Chartered, Washington, D.C., for defendant.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant's motion for summary judgment on plaintiff's claim that his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and on plaintiff's claims of breach of contract and breach of an implied covenant of good faith and fair dealing. Upon careful consideration of the pleadings, exhibits, and the entire record, the Court concludes that defendant's motion for summary judgment must be granted in its entirety.

## Background

The plaintiff, Douglas P. Smith, was hired by the Chamber of Commerce of the United States of America (Chamber) in 1965. Between then and the time he was discharged in January 1983, plaintiff held seven different positions. At the time of his termination, plaintiff held the position of Associate/Assistant Director of Special Publications, a department within the Chamber's Media Relations Division.[1] According to defendant, plaintiff's tenure in his last position was marked by a deterioration of his performance. Defendant asserts that its dissatisfaction with plaintiff's performance, plus economic difficulties experienced by the Chamber in this time period necessitating personal lay-offs, caused the termination. Plaintiff was 53 at the time of his discharge. A younger hire was made in the Special Publications Department after plaintiff's departure.

Plaintiff alleges in this action that defendant terminated him in violation of the ADEA, and that the termination was a breach of contract and a breach of an implied covenant of good faith and fair dealing. Defendant has moved for summary judgment on all claims.

## Discussion

Plaintiff's first cause of action is brought under the ADEA. Defendant has moved for summary judgment on the grounds that first, plaintiff fails to establish a prima facie case of age discrimination, and second, even if plaintiff has established a prima facie case, defendant has articulated legitimate, non-discriminatory reasons for the termination and plaintiff has not demonstrated facts sufficient to infer pretext.

The United States Court of Appeals for the District of Columbia Circuit has stated that in order to present a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate facts sufficient to create a reasonable inference that age discrimination was a "determining factor"

in the employment decision. *Cuddy v. Carmen*, 694 F.2d 853, 856–57 (D.C.Cir. 1982), on remand 580 F.Supp. 788 (D.D.C. 1984), *aff'd*, 762 F.2d 119, *cert. denied,* ——U.S. ——, 106 S.Ct. 597, 88 L.Ed.2d 576 (1985). *See also Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 342 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983). An inference of discrimination is created if the plaintiff shows that he (1) belongs to the statutorily protected age group (40–70); (2) was qualified for the position; (3) was terminated; and (4) was disadvantaged in favor of a younger person. *Coburn*, 711 F.2d at 342; *Snyder v. Washington Hospital Center*, 36 F.E.P. 445, 446 (D.D.C.1984). [available on Westlaw, DCTU database] In *Coburn*, a reduction-in-force case, the court explained that direct evidence of discrimination is not required to prove a prima facie case. 711 F.2d at 343 (citing *Cuddy*, 694 F.2d at 856–57). The court stated: "We believe the exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the firing. In this manner the employee always retains the burden of proving discrimination while the employer's situation is analyzed on a case-by-case basis." *Id.* at 343.

Once a prima facie case has been established, the employer bears a minimal burden of "producing evidence" tending to show that the plaintiff was terminated for a legitimate nondiscriminatory reason. Although this evidence must be legally sufficient to justify a judgment for the defendant, it is merely one of production, not one of persuasion. *Cuddy*, 762 F.2d at 122–23. If the employer does so, and if his evidence is credible, the plaintiff must show by a preponderance of the evidence that the employer's asserted legitimate reason is a "pretext" for discrimination. *Krodel v. Young*, 748 F.2d 701, 705 (D.C.Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985); *Coburn*, 711 F.2d at 342; *Cuddy*, 694 F.2d at 857. In an ADEA

---

**1.** The titles of associate and assistant director both appear to have been used to describe plaintiff's position.

case, the plaintiff's ultimate burden is to prove that age was "a determining factor" in the challenged employment decision. *Krodel,* 748 F.2d at 706; *Coburn,* 711 F.2d at 342; *Cuddy,* 694 F.2d at 857–58. The plaintiff must prove that age made a difference in the employer's decision in the sense that "but for" the discriminatory motive, the employee would have been retained. *See Krodel,* 748 F.2d at 706.

In considering a summary judgment motion such as the one presented here, the Court will only grant summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In an ADEA claim, the Court's task is to ascertain at each step of the test outlined above whether any issue of material fact emerges authentically, and, if not, whether the case calls for judgment as a matter of law. *Abraham v. Graphic Arts International Union,* 660 F.2d 811, 815 (D.C.Cir.1981); *Everett v. Communications Satellite Corp.,* 36 F.E.P. 793, 796 (D.D.C.1983). [available on Westlaw, DCTU database] The Court finds that summary judgment is appropriate in this case as plaintiff has not met his burden of proof for a prima facie case in either showing that he was qualified for the position or that he was replaced by a younger person. The Court also finds that even if plaintiff could establish a prima facie case of age discrimination, summary judgment is still appropriate as defendant has articulated a legitimate non-discriminatory reason for plaintiff's termination and plaintiff has not shown by a preponderance of the evidence that such reason was pretextual and that age was the determining factor in his employer's decision.[2]

In order to support the prima facie case requirement that plaintiff is "qualified," plaintiff must show that he met his employer's legitimate expectations. *See Everett,* 33 F.E.P. at 794 (citing *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 290

(8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983). Defendant provided uncontroverted evidence that shows that plaintiff was not "qualified," in that plaintiff was not meeting his employer's expectations and that defendant was dissatisfied with plaintiff's performance. The Seventh Circuit in *Huhn v. Koehring Co.,* 718 F.2d 239 (7th Cir.1983), emphasized the need for a plaintiff to show that he was adequately performing his duties to his employer's satisfaction. The *Huhn* court affirmed a grant of summary judgment for the defendant employer where the employee had been terminated because of his employer's dissatisfaction with his performance. The *Huhn* court, quoting the trial court, stated: "The issue here is not whether [plaintiff] was performing satisfactorily. The company did not think he was. So long as age was not the basis for the company's decision ... the company can make a decision to terminate, even if the decision is unwise." *Id.* at 243.

Plaintiff cites his long history of employment with the Chamber. However, whatever success plaintiff enjoyed in his early and middle years with the Chamber is not relevant to a determination that defendant was unsatisfied with his performance in the time period prior to his termination. Plaintiff states that he was given two "competent" evaluations in his last year of employment. When the circumstances surrounding these evaluations are examined, it is clear that they do not provide support for the "qualified" requirement. The first proposed evaluation and salary increase, made in early 1981 was never finalized. The Chamber delayed the evaluation for a six-month period to evaluate plaintiff in his new position. Defendant Exh. A. A confidential memorandum written by Mitler, Director of Media Relations, indicated the Chamber's intention to give plaintiff a provisional rating for the early 1981 evalua-

**2.** The Supreme Court recently stated:
Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."
*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

tion, which was being delayed so that that rating would not appear in plaintiff's jacket. Defendant Exh. B. In July 1981, plaintiff did receive a competent evaluation, but the justification section stated that "there should be a continued period of probation" and that in view of the fact that plaintiff had not received a raise in salary for almost two years, a minimal raise was recommended. Defendant Exh. C. Defendant has submitted testimony that· plaintiff's subsequent job performance deteriorated, *see* Mitler Tr. at 114; Staufer Tr. at 183, as well as contemporaneous written documents detailing inadequacies in performance. Defendant Exhs. E & F.

■■■ Plaintiff challenges the accuracy of the criticisms of his work performance. However, plaintiff's perception of himself, and of his work performance, is not relevant. It is the perception of the decision-maker which is relevant. *See Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980); *McDaniel v. Mead Corp.*, 622 F.Supp. 351, 360 (W.D.Va.1985); *Rosengarten v. J.C. Penney Co.*, 605 F.Supp. 154, 157 (E.D.N.Y.1985). Plaintiff does not present a material issue of fact on the question of the quality of his work by merely challenging the judgment of his superiors. *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Plaintiff also contends that all but one of defendant's witnesses were unfamiliar with plaintiff's work. However, plaintiff's employers were entitled to rely on reports of plaintiff's performance given by his immediate supervisor, Stauffer, and by others familiar with his work. *See Snyder*, 36 F.E.P. at 447. Plaintiff also relies on two letters of recommendation written by Stauffer after his termination blaming the termination on budgetary constraints. Plaintiff Exhs. 4 & 5. The Court, having examined these letters, finds they were written for the purpose of helping plaintiff obtain new employment and that they are deliberately vague as to plaintiff's performance in the time period in question. Lastly, the fact that plaintiff submits he was unaware of his probationary status does not change the Court's conclusion that plaintiff was not "qualified." *See Pace v. Southern Railway System*, 701 F.2d 1383, 1391 n. 8 (11th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983) ("Taking as true that appellant was unaware ... of the dissatisfaction with his performance, ... a basis of poor management and decision-making may be made out, but certainly no basis for an inference of discrimination").

Plaintiff also has not shown that he was replaced by a younger individual. Plaintiff alleges that he has met this requirement of a prima facie case because, after his termination, the Chamber hired Terri Shonerd, a 27–year–old woman, to fill a position of assistant director in his department.[3] After a close review of the pleadings, exhibits, affidavits, and depositions filed, the Court concludes that Shonerd did not fill plaintiff's position; rather, Shonerd filled a position left vacant by the resignation of another member of the department, which was originally a paraprofessional position upgraded to a management-level position. The request for an upgrade occurred in April 1981, well before plaintiff's termination. Plaintiff's position was terminated and his responsibilities were either eliminated or assumed by Stauffer. Stauffer Tr. at 242; Grant Tr. at 139.

■■■ The Court's conclusion that plaintiff's position was not the one filled by Shonerd, and therefore that plaintiff has not shown he was disadvantaged in favor of a younger person, is supported by a review of the responsibilities assigned to the positions. Shonerd, after being shown an unlabeled job description which actually described plaintiff's former position, testified that that job description did not describe her position. Shonerd Tr. at 94–95. The responsibilities of the position which Shonerd filled were primarily those of the

---

**3.** Apparently, the advertisement for this position listed the job as associate director. However, the job was incorrectly listed, as the position actually was for an assistant director. This was the position ultimately filled. Stauffer Tr. at 195–97.

former paraprofessional and included editing and proofreading, aiding Stauffer in the production of the annual report, and other tasks in aid of the Chamber's publications. In contrast, plaintiff's primary responsibilities, which were not assumed by Shonerd, had been to compile information and help produce several different special department publications. One of those publications, which was a primary responsibility of plaintiff's, was eliminated after plaintiff's termination and Shonerd's responsibility with respect to the others related to her function as an editor and proofreader, which had not been plaintiff's role in relation to those publications.

Regardless of whether plaintiff could have presented a prima facie case, summary judgment clearly is warranted on his ADEA claim as defendant has fulfilled its burden of producing evidence showing that plaintiff was terminated for legitimate non-discriminatory reasons. Plaintiff has not shown by a preponderance of evidence that those reasons were pretextual and that age was a determining factor in the termination decision.

Defendant has produced evidence showing that the Chamber was undergoing increasing financial difficulties at the time preceding plaintiff's termination. For several years preceding 1982, the Chamber operated at substantial losses. Kraus Aff. at ¶ 3. *See* Defendant Exhs. 3 & 4. Various cutback procedures were recommended, including cost-reduction measures on non-personnel items, such as travel, utilities, and meals. Kraus Aff. at ¶¶ 11, 12; Defendant Exh. 9. In addition, the Chamber concluded it had to reduce its payroll expenditures and it therefore deferred hirings and identified "marginal" employees who could be terminated. Kraus Aff. at ¶¶ 11, 12, 13; Defendant Exhs. 8 & 10. Within the departments connected to plaintiff's department, the defendant has identified two other "marginal" employees who were released because of budget reductions; one was over age 40 and the other was age 29. Kraus Aff. at ¶¶ 13 & 15;

Mitler Tr. at 74–74, 77–78; Defendant Exh. 10. The parties responsible for the termination decisions were all over age 40. Kraus Aff. at ¶ 15.

Defendant has produced evidence showing that plaintiff was fired because of the Chamber's economic problems necessitating personnel reductions and because of plaintiff's "marginal" employee status. Both of these reasons are legitimate ones. *See Parcinski v. Outlet Co.*, 673 F.2d 34, 36 (2d Cir.1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 950 (1983); *Everett*, 33 F.E.P. at 794–95. *See generally Coburn, supra.* Defendant has provided testimony that age was not a factor in the decision to discharge plaintiff. Stauffer Tr. at 182–83; Mitler Tr. at 141–42; Van Meter Tr. at 82.

In order to survive a motion for summary judgment, plaintiff must not only present a prima facie case but also must show that defendant's proffered reasons were pretextual and present some evidence that age was a determining factor in the decision. The evidence need not be direct evidence of discrimination, but may be circumstantial evidence. *See Coburn*, 711 F.2d at 343–44; *Cuddy*, 694 F.2d at 859; *Snyder*, 36 F.E.P. at 448. In *Snyder*, the court stated:

> Evidence that the reasons given by an employee for the employment decision were not the 'real' ones does not prove age discrimination, it only proves that some other reason motivated the employer. Absent some evidence that the real reason was the employee's age ... either directly through the employer's statements or actions regarding the plaintiff or indirectly through evidence of the employer's treatment of other members of the protected class, it is impossible for an employee who challenges the decisions as discriminatory to survive a motion for summary judgment.

*Id.* at 148.[4]

The Court already has concluded that defendant's dissatisfaction with plaintiff's

---

**4.** The Court does not find, as plaintiff asserts, that *Krodel v. Young*, 748 F.2d 701 (D.C.Cir.

performance is a credible and supported reason for his termination, which plaintiff has not adequately controverted. Plaintiff asserts that the Chamber's financial position was not as severe as defendant claims; that during this time the Chamber engaged in an extensive construction project without borrowing funds, Lesher Dep. at 23–24; Plaintiff Exh. 11, that membership increased, Lesher Dep. at 33, Plaintiff Exh. 13 p. 4; and that the Chamber had a large sum in its investment fund. Plaintiff Exh. 15. However, the Court finds that plaintiff has not effectively discredited the Chamber's assertion that it was experiencing financial difficulties, as is amply supported by defendant's exhibits and testimony about the financial picture and overall cost-cutting measures taken to meet the problem. For example, the investment fund actually decreased substantially from several years before, Lesher Tr. at 8, and plaintiff's expert accountant failed to consider the Chamber's fiscal concerns. Seay Tr. at 106–08. Finally, the Chamber was prohibited from financing its capital improvements by borrowing. The Court does not sit to judge the wisdom of a corporation's business decisions. *Stacey v. Allied Stores Corp.*, 768 F.2d 402, 408 (D.C.Cir. 1985). The ADEA was not intended as a vehicle for judicial review of business decisions such as how the Chamber should have allocated its resources. *See Parcinski*, 673 F.2d at 37; *Kephart*, 630 F.2d at 1223.

The Court views in a like manner the Chamber's decision to hire Shonerd a short time after plaintiff's termination. The Court already has concluded that the two positions were not comparable. Selected hires were made where needed, Kraus Aff. at ¶ 11, and due to a resignation the Special Publications Department was barren. The Chamber did not seek only younger people for the position; people over 40 were interviewed as well. Stauffer Tr. at 265.

■ Plaintiff has not submitted any other evidence tending to show that age played a role in the Chamber's decision, including any statistical pattern of age discrimination or any other alleged instance of age discrimination. Therefore, the Court finds that plaintiff has not supported his burden of showing by a preponderance of the evidence that the defendant's reasons were pretextual and that age was a determining factor in the decision to terminate plaintiff. Accordingly, summary judgment is granted for defendant on plaintiff's ADEA claim.

■ The Court also grants summary judgment for defendant on plaintiff's breach of contract and breach of an implied convenant of good faith and fair dealing claims.

The law of the District of Columbia is that "[c]ontracts ... for no definite period are terminable at the will of either party with no ensuing liability on the part of either." *Pfeffer v. Ernst*, 82 A.2d 763, 764 (D.C.1951). *See also Taylor v. Greenway Restaurant, Inc.*, 173 A.2d 211, 211 (D.C. 1961). The assumption underlying a terminable at will contract is that "even though they speak in terms of permanent employment the parties have in mind merely the ordinary business contract for a continuing employment terminable at will of either party." *Sullivan v. Heritage Foundation*, 399 A.2d 856, 860 (D.C.1979) (quoting *Littell v. Evening Star Newspaper Co.*, 120 F.2d 36, 37 (D.C.Cir.1941). Such an assumption, however, is incorrect where there is evidence of the parties' intent to contract otherwise. *Hodge v. Evans Financial Corp.*, 707 F.2d 1566, 1569 (D.C. Cir.1983); *Littell*, 120 F.2d at 37. The *Hodge* court stated: "[I]n order to discern the parties' intent, the court should look at

1984), dictates that plaintiff can survive a motion for summary judgment by merely establishing a prima facie case and effectively discrediting the employer's proffered justification without submitting some type of evidence tending to show age was a factor in the decision. The

*Krodel* court stated it was not presented with that question. *Id.* at 708 n. 5. Indeed, in *Krodel*, the plaintiff presented additional evidence including statistical evidence and testimony showing a preference for younger employees. *Id.* at 708.

such factors as the express terms of the contract, evidence of surrounding circumstances, or the existence of additional consideration." 707 F.2d at 1569. It is a basic principle of contract law that the intent of the parties must be determined from both sides and there has been "no meeting of the minds where only one party intends a certain element." *See Barze v. American International Exports, Inc.*, 454 A.2d 816, 817 (D.C.1983).

Both parties agree that plaintiff's contract was for no definite length of time. Plaintiff argues, however, that the contract was not an at will contract, but instead was one that could be terminated only *for just cause.* Plaintiff argues that, upon beginning employment with defendant in 1965, he was given a 60–day "get acquainted" period. Plaintiff Exh. 17. Plaintiff also relies on a 1977 pamphlet referring to a Chamber policy to promote from within, whenever possible, Plaintiff Exh. 8, and an undated policy paper which stated that in the event of a reduction in force an employee would be transferred to another position, commensurate with his qualifications, if such was available. Plaintiff Exh. 16. Plaintiff also testifies that an oral statement was made to him at the time of his employment that after the get-acquainted period he would become a permanent member of the staff and would only be let go for cause. Smith Aff. ¶ 16.

For the reasons set forth in the Court's discussions about plaintiff's inability to present the prima facie case requirement that he was qualified, the Court also finds that plaintiff was terminated for just cause. However, the Court also finds that even without this just cause no breach of contract action could lie because the contract for employment was an "at will" contract and not a contract for permanent employment. The Chamber brochures, which have not been distributed for some time, and which were not given to plaintiff

upon his transfer into his last position, Kraus Aff. at ¶ 26, Smith Tr. at 139–40, do not create a contract that was terminable other than at will. *See Paice v. Maryland Racing Commission*, 539 F.Supp. 458, 461 (D.Md.1982); *Rogers v. International Business Machines Corp.*, 500 F.Supp. 867, 869 (W.D.Pa.1980) ("Reliance on the vague and conclusory statements contained in the material of record is insufficient as a matter of law to establish a specific term of employment.") Additionally, the oral statement plaintiff alleges was made to him in 1965 also does not create other than an at-will contract. *See Paice*, 539 F.Supp. at 461 ("Nor is the court persuaded that the alleged representations made to plaintiff when he was initially hired [in 1959] as to the anticipated duration of his employment ... create a reasonable inference that there was a mutually expressed understanding that *in 1981* plaintiff would not be terminated without cause.") *See also Prouty v. National Railroad Passenger Corp.*, 572 F.Supp. 200 (D.D.C.1983).[5]

Finally, the reduction-in-force/transfer policy statement, which is undated (precluding the Court from determining whether it might apply to the time period in question), does not give plaintiff a cause of action, assuming arguendo that it did constitute a policy in force at the time of the termination. The Chamber's documented dissatisfaction with plaintiff's performance provides sufficient justification for defendant's lack of consideration of transfer possibilities, even assuming another job was available that would have been appropriate.

Summary judgment for defendant also is granted on plaintiff's alleged tort claim for breach of an implied covenant of good faith and fair dealing. The law of the District of Columbia is stated in *Ivy v. Army Times Publishing Co.*, No. 8018–77, Mem.Op. at 3, *petition for rehearing en banc denied*, 428 A.2d 831 (D.C.1981), in

---

5. The Court does not find *Greene v. Howard University*, 412 F.2d 1128 (D.C.Cir.1969), to compel a different result. Unlike the instant case, the *Greene* court relied on the fact that the policy handbook was extremely specific as to

the employment policies, and more importantly, relied on the University's common practice of conduct in this area. The Court also noted the special circumstances surrounding a university setting.

which the District of Columbia Court of Appeals held: "While some jurisdictions have recognized a cause of action for wrongful discharge in tort, and in contra[c]t, this jurisdiction allows an employment contract of indefinite duration to be terminated for any reason at the wish of either party. There is no evidence that appellant's oral contract was for a fixed period; it could therefore have been terminated at will by appellees without incurring liability." *Id.*, Mem.Op. at 3 (citations omitted).[6]

Plaintiff argues that the decision in *Eller v. Houston's Restaurants, Inc.*, 35 F.E.P. 1801 (D.D.C.1984), directs a different result. However, in *Eller*, the Court found there were genuine issues of material fact in dispute as to whether the employment contract was terminable at will rather than only for cause and so declined to grant summary judgment on the wrongful discharge claims. *Id.* at 1802. This Court previously has found that plaintiff's employment contract was for no fixed period, nor was it one for permanent employment; summary judgment must be granted to defendant on this claim.

For the reasons set forth above, the Court grants defendant's motion for summary judgment in its entirety.

---

**6.** Plaintiff appends the Order issued in *Gioielli v. Medical Society Services, Inc.*, No. 83–3169 (D.D.C. May 15, 1985) [available on Westlaw, DCTU database], granting defendant's motion for a new trial or remittitur, in which the court assumed the availability of a cause of action for breach of an "implied covenant of good faith and fair dealing" and holding that the plaintiff in that case proved the elements of her claim. One of the two cases cited in *Gioielli, Gates v. Life Montana Insurance Co.*, 196 Mont. 178, 638 P.2d 1063, 1066 (1982), which recognized the existence of this cause of action in Montana, relied on two cases—*Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977), and *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974). This Court's conclusion that *Ivy* correctly states the controlling law is supported by the fact that the *Ivy* court cited and rejected *Fortune* and *Monge*. *See Ivy*, Mem.Op. at 3. The *Gioielli* Order is of no aid to this Court in determining this issue, both because of the conflicting case law discussed above and because the Order did not explain the factual circumstances presented to the jury and underlying its verdict.