Morris ARAKAWA, et al., Plaintiffs,

v.

Ronald REAGAN, President of the United States, et al., Defendants.

Civ. A. No. 85–3488 SSH.

United States District Court, District of Columbia.

July 28, 1987.

Jack B. Solerwitz, Washington, D.C., for plaintiffs.

Judith F. Ledbetter, Virginia Strasser, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

This case involves the claims of 38 former air traffic controllers, all of whom were discharged by the Federal Aviation Administration (FAA) in 1981 because of their alleged involvement in an illegal strike against the Government of the United States. The matter is now before the Court on defendants' motion to dismiss, the plaintiffs' later-filed motion to join additional plaintiffs. Upon consideration of the defendants' motion, plaintiffs' opposition thereto, defendants' reply, and the entire record, the Court concludes that defendants' motion should be granted in part and denied in part. The Court also concludes that plaintiffs' motion should be denied.

### Background

On August 3, 1981, after several months of unsuccessful efforts to reach agreement with the FAA on a collective bargaining agreement, the Professional Air Traffic Controllers Organization (PATCO) called on its members to strike. Over 70 percent of the nation's air traffic controllers answered the call, causing a significant disruption to private and commercial aviation in the United States. *Professional Air Traffic Controllers Organization v. Federal Relations Authority*, 685 F.2d 547, 551 (D.C.Cir.1982).

As federal employees, air traffic controllers are statutorily prohibited from striking. *See* 5 U.S.C. § 7311(2) (person who "participates in a strike" against the United States may not accept or hold a federal position); 18 U.S.C. § 1918(3) (person who participates in strike against the United States subject to $1,000 fine and imprisonment). On the first day of the strike, President Reagan issued an ultimatum to the striking air traffic controllers to return to work within 48 hours or forfeit their jobs. *See* 17 Weekly Comp.Pres.Doc. 845 (Aug. 3, 1981). Plaintiffs were among those discharged, pursuant to the procedures required by 5 U.S.C. §§ 7512–14, for failing to return to work.

Of the 38 plaintiffs, 37 appealed their dismissals to the Merit Systems Protection Board (MSPB), as authorized by 5 U.S.C. § 7513(d). Each of the dismissals was upheld.[1] Of those who appealed to the MSPB, 31 petitioned for review in the United States Court of Appeals for the Federal Circuit.[2] On February 24, 1983, the Federal Circuit, faced with more than 225 petitions for review by former air traffic controllers and aware of more than 1,500 other cases still pending before the MSPB, issued an order staying review in all but seven cases then before the court. *See In re Air Traffic Controllers Litigation,* slip op. at 3 (Fed.Cir. Feb. 24, 1983). In doing so, the Federal Circuit sought to "determine the common controlling legal issues as soon as possible and thus avoid repititious and unnecessary decision of the same issues in many cases." *Id.* at 2.

On December 10, 1984, the Clerk of the Federal Circuit notified all those whose petitions had been stayed that disposition of the "lead cases," including Supreme Court review, was complete, and directed those who still wished to seek review to file a renewed petition before January 10, 1985.[3] The Clerk's notice reminded the petitioners of "the impropriety of frivolous appeals" and specified that "[a]ny renewed petition must include a statement of the issues re-

---

1. The appeals of plaintiffs Arakawa, Barros, Degagne, Geutsch, Inada, Isono, Konianpia, Kunishige, Lee, Maekawa, Matsumoto, Nakano, Omura, Suda, Waialee, and Yap were consolidated with *Aiken, et al. v. Dep't of Transp., FAA,* No. SF075281F3436, slip op. (Jan. 14, 1983) (hereinafter *Aiken,* Regional op.), for decision before the San Francisco Regional Office of the MSPB. Such consolidation is authorized by 5 U.S.C. § 7701(f)(1). Guetsch, Inada, Lee, Omura, and Suda petitioned for review by the full MSPB, and their discharges were upheld in *Aiken, et al. v. Dep't of Transp., FAA,* 17 M.S.P.R. 553 (MSPB 1983) (hereinafter *Aiken,* MSPB op.).

The appeals of plaintiffs Castillo, Ellis, Fong, Fukui, Galves, Hutchison, Kanetani, Lau, Lum, McKee, Nitta, Tanner, Nakao, Hoe, and Kamau were consolidated with *Acosta, et al. v. Dep't of Transp., FAA,* No. SF075281F3349, slip op. (Jan. 13, 1983) (hereinafter *Acosta,* Regional op.), for decision before the San Francisco Regional Office of the MSPB. Castillo, Fong, Lum, McKee, Tanner, Hoe, and Kamau petitioned for review by the full MSPB, which was denied in *Acosta, et al. v. Dep't of Transp., FAA,* 18 M.S.P.R. 270 (MSPB 1983).

The appeals of plaintiffs Copely and Gripper were consolidated with *Baker, et al. v. Dep't of Transp., FAA,* No. SF075281F3040, slip op. (Jan. 25, 1983) (hereinafter *Baker,* Regional op.), for decision before the San Francisco Regional Office of the MSPB. As neither Copely nor Gripper petitioned for review by the full MSPB, the decision of the Regional Office became the final decision of the MSPB. *See* 5 C.F.R. § 1201.113.

The appeal of plaintiff Hall was consolidated with *Prieto, et al. v. Dep't of Transp., FAA,* No. NY075281F1259, slip op. (Jan. 12, 1983) (hereinafter *Prieto,* Regional op.), for decision by the New York Regional Office of the MSPB. Hall did not seek review by the full MSPB.

The discharge of plaintiff Adams was upheld by the Atlanta Regional Office of the MSPB in *Adams, et al. v. Dep't of Transp., FAA,* No. AT075281F1270, slip op. (Jan. 29, 1983) (hereinafter *Adams,* Regional op.), and full MSPB review was denied in *Adams, et al. v. Dep't of Transp., FAA,* 16 M.S.P.R. 710 (MSPB 1983).

The discharge of plaintiff Ayau was upheld by the San Francisco Regional Office of the MSPB in *Ayau, et al. v. Dep't of Transp., FAA,* No. SF075281F3402, slip op. (Jan. 19, 1983) (hereinafter *Ayau,* Regional op.). Ayau did not seek review by the full MSPB.

Defendants indicate that plaintiff Gonzales' discharge was upheld by both a Regional Office of the MSPB and the full MSPB, *see* Declaration of Anne E. Hoke-Witherspoon, Attachment 3, but do not provide a full citation to either decision. Plaintiff Geisert apparently did not appeal his discharge to the MSPB. *Id.*

2. Plaintiffs Konianpia, Tanner, Gonzales, Nakao, Ayau, and Kamau did not petition the Federal Circuit for review.

3. The Federal Circuit's opinions in the "lead cases" are found at 735 F.2d 477–549.

lied on and not decided in any of the 'Lead Cases'." Of the 31 plaintiffs in this case who had filed petitions for review, ten submitted renewed petitions.[4] Those petitions apparently are pending before the Federal Circuit.

In addition to seeking reinstatement through reversal of their discharges, at least six plaintiffs have sought re-employment with the FAA. However, in reliance on a Presidential Directive, *see* 17 Weekly Comp.Pres.Doc. 1364 (Dec. 9, 1981), the Office of Personnel Management (OPM) has determined that no air traffic controller discharged for illegal strike participation will be eligible for re-employment with the FAA.[5]

On November 1, 1985, plaintiffs filed a 13–count complaint, naming President Reagan, the FAA, the OPM, the MSPB, and the Federal Circuit as defendants.[6] The counts include constitutional claims under the First and Fifth Amendments to the United States Constitution (counts one and two), common law tort claims, presumably under the Federal Tort Claims Act, ch. 753, title I, 60 Stat. 812, 842–47 (1946) (codified, as amended, as scattered sections of Title 28 of the United States Code) (counts three, four, five, nine, ten, eleven, and thirteen), unfair labor practice claims (counts six, seven, and eight), and a claim that defendants conspired to deprive plaintiffs of their civil rights (count twelve). Plaintiffs seek reinstatement with backpay, benefits, and necessary retraining, $1 million each in compensatory damages, and $1 million each in punitive damages. Defendants move to dismiss.

*Discussion*

**I. *Jurisdictional Issues***

**A. *Jurisdiction To Review Decisions of the MSPB and the Federal Circuit***

Plaintiffs allege that the MSPB and the Federal Circuit have denied them due process by wrongfully consolidating their individual cases with those of other former air traffic controllers, by limiting their opportunities for adversarial hearings, and by failing to "recognize" issues that the plaintiffs believe are dispositive. Without addressing the merits of plaintiffs' objections, the Court concludes that the complaint must be dismissed with respect to the MSPB and the Federal Circuit because this Court lacks jurisdiction to engage in the sort of judicial review requested.

Under 28 U.S.C. § 1295(a)(9), the Federal Circuit has "exclusive jurisdiction" over appeals from "a final order or final decision" of the MSPB. Similarly, under 28 U.S.C. § 1254, the Supreme Court of the United States has jurisdiction to review—by writ of certiorari, by appeal, or by certification by a court of appeals—any decision of a United States Court of Appeals. Plaintiffs' desire to challenge the substantive and procedural decisions made by the MSPB and the Federal Circuit in handling their cases should proceed along the heretofore universally accepted route of judicial review, not through a collateral attack raised in the district court. (None of the named plaintiffs fully exhausted their normal opportunities for judicial review.) Accordingly, the complaint is dismissed with

---

4. According to defendants' account, *see* Declaration of Anne E. Hoke-Witherspoon, Attachment 3, plaintiffs Fong, Kanetani, Lum, Nitta, Copley, Adams, Gonzales, Hall, Gripper, and Hoe reinstated their petitions for review in the Federal Circuit.

5. Of the six plaintiffs—Arakawa, Gonzales, Hall, McKee, Matsumoto, and Yap—who sought re-employment, four have challenged the OPM's unsuitability determination. Hall, McKee, and Matsumoto were members of the plaintiff class in *Wagner v. OPM,* 783 F.2d 1042 (Fed.Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986), in which the Federal Circuit upheld OPM's suitability policy with respect to

the fired air traffic controllers. Relying on *Wagner,* the San Francisco Regional Office of the MSPB has denied petitions for review of the OPM's unsuitability determination filed by McKee and Matsumoto. Both are seeking review by the full MSPB. The unsuitability determination with regard to Yap was affirmed by the San Francisco Regional Office of the MSPB in *Yap v. OPM,* No. SF07318510386, slip op. (May 21, 1985). Yap did not seek review by the full MSPB.

6. As originally filed, the complaint listed 26 plaintiffs. By Order of March 5, 1985, the Court allowed 12 additional individuals to join in the complaint.

respect to the MSPB and the Federal Circuit.

### B. *Jurisdiction To Review Employment—Related Claims of Federal Employees*

In the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (codified as scattered sections of Title 5 of the United States Code), Congress created a detailed administrative and judicial process for resolving the employment-related complaints of federal employees. Administrative review of plaintiffs' discharges (termed "removals" for the purpose of the CSRA) is governed by 5 U.S.C. §§ 7511–14, and judicial review is governed by 5 U.S.C. §§ 7701–03. All but one of the plaintiffs have, to varying degrees, availed themselves of the review procedures provided under the CSRA.

With plaintiffs now attempting to litigate constitutional and statutory claims relating to their discharges in an action independent of the CSRA scheme, it becomes necessary for the Court to determine the extent to which the CSRA provides an exclusive remedy for employment-related claims. The courts have addressed this issue in the context of two broad distinctions: constitutional versus nonconstitutional claims, and claims for monetary relief versus claims for injunctive relief.

■ As this circuit's Court of Appeals recently announced, it is well established "that the CSRA is the exclusive remedy for aggrieved federal employees advancing nonconstitutional claims." *Spagnola v. Mathis*, 809 F.2d 16, 30 (D.C.Cir.), *reh'g en banc granted on other grounds*, 809 F.2d 40 (D.C.Cir.1987). This rule originated in *Carducci v. Regan*, 714 F.2d 171 (D.C.Cir. 1983), in which the court concluded "that

the exhaustive remedial scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions." *Id.* at 174; *see also Gray v. OPM*, 771 F.2d 1504, 1512 (D.C.Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1478, 89 L.Ed.2d 732 (1986); *Barnhart v. Devine*, 771 F.2d 1515, 1526–27 (D.C.Cir.1985). Accordingly, those counts of the complaint raising nonconstitutional claims must be dismissed.[7]

■ Although *Carducci* held that nonconstitutional claims were preempted by the CSRA, the court expressly declined to consider the effect of the CSRA on the federal courts' jurisdiction to entertain constitutional claims. *See Carducci*, 714 F.2d at 176, 177; *but see Williams v. IRS*, 745 F.2d 702, 704 (D.C.Cir.1984) *(per curiam )* ("*Carducci* makes plain" that the "CSRA does not supplant the authority of courts to safeguard constitutional rights"). However, later decisions have held that the CSRA does not affect the district courts' jurisdiction over most, if not all, constitutional claims. *See, e.g., National Federation of Federal Employees v. Weinberger*, 818 F.2d 935, 940 (D.C.Cir.1987) ("federal employees may seek to enjoin government actions that violate their constitutional rights"); *Hubbard v. EPA*, 809 F.2d 1, 11 n. 15 (D.C.Cir.1986), *reh'g en banc granted on other grounds*, 809 F.2d 15 (D.C.Cir. 1987) ("CSRA does not preclude federal employees from seeking equitable relief against agencies for allegedly unconstitutional personnel actions"). Therefore, plaintiffs' claims under the First and Fifth Amendments are not preempted by the CSRA.

---

7. The exclusivity of an individual's CSRA remedy is not dispositive of the unfair labor practice claims, because Congress has provided a separate set of provisions dealing with federal employees' rights under collective bargaining agreements. *See* 5 U.S.C. §§ 7101–35. However, as with plaintiffs' other nonconstitutional claims, this Court lacks jurisdiction because Congress expressly has prescribed a different route of review for such claims. Such disputes

are to go first to the Federal Labor Relations Authority, with judicial review available in the courts of appeals. *See* 5 U.S.C. §§ 7105(a)(2) and 7123.

Additionally, because plaintiffs' tort claims are resolved on the basis of CSRA exclusivity, the Court does not reach defendants' contention that plaintiffs have failed to exhaust administrative remedies under the Federal Tort Claims Act.

■ As suggested by the above citations, however, this Court's jurisdiction over constitutional claims is limited by the second distinction of monetary relief versus injunctive relief. In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court considered a federal employee's attempt to recover damages through a civil action for a supervisor's alleged violation of his First Amendment rights, while simultaneously pursuing a claim under the CSRA. The Supreme Court held that even though remedies under the CSRA may not be as fully compensatory as those available under the judicially-created *Bivens*-type of action, the CSRA provided the exclusive remedy. *See id.* at 388–90, 103 S.Ct. at 2416–17. The courts of this circuit, strictly limiting the case's applicability to its holding, have held that *Bush* precludes direct judicial review of constitutional claims for monetary relief, but not review of constitutional claims seeking injunctive relief. *See, e.g., National Federation of Federal Employees*, 818 F.2d at 940; *Williams*, 745 F.2d at 705; *Bartel v. FAA*, 725 F.2d 1403, 1415 (1984).[8]

8. While the Court of Appeals in *National Federation of Federal Employees* correctly found that *Bush* specifically addressed only damage actions, its blanket rule allowing actions seeking injunctive relief is difficult to square with the Supreme Court's reasoning in *Bush*. Noting that the CSRA represents "an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed," 462 U.S. at 385, 103 S.Ct. at 2414, and conceding that the CSRA's remedies were not fully compensatory, the Supreme Court explicitly declined to make judicial policy judgments about the proper scope of relief.

The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights.

* * * In all events, Congress is in a far better position to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also may inform itself through factfinding procedures such as hearings that are not available to the courts.

*     *     *     *     *     *

Thus, we do not decide whether or not it would be good policy to permit a federal employee to recover damages from a supervisor who has improperly disciplined him for exercising his First Amendment rights. As we did in [*U.S. v. Standard Oil*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)] we decline "to create a new substantive legal liability without legislative aid and as at the common law," 332 U.S. at 302 [67 S.Ct. at 1605], because we are convinced that Congress is in a better position to decide whether or not the public interest would be served by creating it. *Id.* at 388–90, 103 S.Ct. at 2416–17. It seems to this Court that the Supreme Court's decision was predicated on the concept of deference to the legislature's choice of a remedial scheme, and had nothing to do with the fact the only damages were sought.

Nor can the rule permitting the seeking of injunctive relief be defended on the basis of institutional competence or the absence of a forum in which to raise constitutional claims. In *Bush*, the Supreme Court noted that "[c]onstitutional challenges to agency action, such as the First Amendment claims raised by petitioner, are fully cognizable within [the CSRA] system." 462 U.S. at 386, 103 S.Ct. at 2415; *see also Krodel v. Young*, 748 F.2d 701, 712 (D.C.Cir. 1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985) (opportunity for MSPB and Federal Circuit review provides "meaningful remedies" for First Amendment violation); 5 U.S.C. § 7701(c)(2)(C) (MSPB may reverse any agency decision "not in accordance with law"); *cf. Rose v. Dep't of Health and Human Services*, 721 F.2d 355, 357 (Fed.Cir.1983) (addressing constitutional challenge). Indeed, claims for injunctive relief arguably present an "easier" case than was presented in *Bush*. In *Bush*, the Supreme Court was forced to concede that exclusive reliance on the CSRA would deny federal employees a remedy, *i.e.*, damages, otherwise available. To the contrary, injunctive relief, in the form of reinstatement with back pay, is fully available under the CSRA. *Robinson v. Dep't of Army*, 21 M.S.P.R. 270, 272 (MSPB 1984); 5 U.S.C. § 5596 (backpay available as remedy for "unjustified or unwarranted personnel action").

This Court does not suggest that direct judicial review of federal employees' constitutional claims should always be foreclosed. In *Bush*, the federal employee had a right to judicial review of an adverse administrative decision on his constitutional claim. *See* 462 U.S. at 387, 103 S.Ct. at 2416. In those situations where the

Accordingly, plaintiffs' claims for monetary relief are dismissed.[9]

■ An issue not expressly addressed in the case law is whether the district court's jurisdiction with respect to the seeking of injunctive relief based upon constitutional claims is concurrent with the MSPB's and the Federal Circuit's, or exclusive. However, review of the relevant authority leads to the conclusion that it is concurrent. First, the CSRA expressly authorizes the MSPB to reverse any termination "not in accordance with law." 5 U.S.C. § 7701(c)(2)(C). Accordingly, constitutional arguments may be advanced and resolved in CSRA proceedings. *See Bush*, 462 U.S. at 386, 103 S.Ct. at 2415; *Krodel*, 748 F.2d at 712. Second, in discussing the exclusivity of CSRA remedies, the courts have assumed that constitutional claims could be brought under the CSRA and have focused instead on whether those remedies "displace," *Cutts*, 692 F.2d at 140, or "preclude," *Hubbard*, 809 F.2d at 11 n. 15, judicially-created remedies. Thus, the Court finds that its jurisdiction to hear constitutional claims seeking injunctive relief is concurrent with the jurisdiction of the MSPB to hear such claims.

### C. *Summary*

The Court lacks subject matter jurisdiction over plaintiffs' claims against the MSPB and the Federal Circuit, and over plaintiffs' nonconstitutional claims against defendants Reagan, FAA, and OPM. With respect to the remaining constitutional claims (counts one and two of the complaint), plaintiffs may seek only injunctive relief in the form of reinstatement, but no monetary relief.

### II. *Sufficiency of Plaintiffs' Claims*

Having defined the scope of its jurisdiction, the Court proceeds to review the sufficiency of the remaining claims. It must be noted that although plaintiffs complain that the MSPB and the Federal Circuit improperly consolidated the cases of air traffic controllers whose circumstances varied widely, they commit that very sin in their complaint. The extent to which plaintiffs have pursued available administrative relief varies across the entire spectrum, from one plaintiff, Ken Geisert, who did not challenge his discharge with the MSPB, to several plaintiffs who have appealed all the way to the Federal Circuit (but who have not sought Supreme Court review). Likewise, a number of plaintiffs have sought re-employment with the FAA, but most have not.[10] Most importantly, plaintiffs allege a host of actions taken by defendants which are labeled due process or First Amendment violations without specifying which, if any, of the plaintiffs were actually injured by each particular action or policy.

CSRA does not provide for judicial review at some point in the adjudicatory process, the courts have been understandably hesitant to limit employees to their CSRA remedies. *See, e.g., Borrell v. United States Int'l Communications Agency*, 682 F.2d 981, 990 (D.C.Cir.1982). Further, it is conceivable that some constitutional challenges will be so tangentially related to the underlying personnel dispute that administrative resolution would be ineffective. *Cf. Andrade v. Lauer*, 729 F.2d 1475, 1491–92 (D.C.Cir. 1984) (constitutionality of the appointments of federal officials ordering a reduction in force); *but see Wallace v. Lynn*, 507 F.2d 1186, 1190–91 (D.C.Cir.1974) (where administrative procedures may resolve dispute, without resolving constitutional issues, judicial review withheld until administrative process complete).

In other words, while there may be sound prudential reasons for the courts to preserve for federal employees an opportunity for direct judicial review of constitutional claims in some cases, this Court fails to see such a reason for a blanket rule which preserves direct judicial review simply because injunctive relief is sought. *Compare National Federation of Federal Employees v. Weinberger*, 640 F.Supp. 642, 651–55 (D.D. C.1986) (*Bivens*-type action available only where CSRA fails to provide opportunity for judicial review), *rev'd*, 818 F.2d 935 (D.C.Cir.1987), *with Cutts v. Fowler*, 692 F.2d 138, 140 (D.C.Cir.1982) (CSRA remedies not exclusive because no such "clear statement" by Congress).

9. Plaintiffs' request for a jury trial also is stricken, because only claims for equitable relief remain.

10. What information the Court does have concerning the factual circumstances of each plaintiff's case comes not from plaintiffs, but from defendants in the form of copies of relevant MSPB decisions appended to the motion to dismiss.

While the inadequacies of the complaint severely limit the Court's ability to assess the claims on an individualized basis, as the plaintiffs purport to desire, the principle of *res judicata*, or claim preclusion, allows the Court to dispose of most of the claims. Under *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). This preclusive effect attaches to administrative proceedings when, as with proceedings before the MSPB, the administrative tribunal "is acting in a judicial capacity and resolves issues of fact properly before it which the parties have had an adequate opportunity to litigate," *United States v. Utah Constr. Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1965), and there is an opportunity for judicial review of adverse decisions. *Id.; Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 484, 102 S.Ct. 1883, 1899, 72 L.Ed.2d 262 (1982). Failure to appeal an adverse decision does not alter the preclusive effect of the initial decision. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 400–01, 101 S.Ct. 2424, 2428–29, 69 L.Ed.2d 103 (1981); *United States v. American Telephone and Telegraph Co.*, 714 F.2d 178, 181 (D.C.Cir.1983).

Applying these well-established principles to the case at hand, the Court holds that those plaintiffs who opted to challenge their discharges through appeals to the MSPB are now barred by *res judicata* from relitigating those challenges in this Court. The extent to which plaintiffs sought to raise their constitutional claims before the MSPB is unclear.[11] However, a precise determination is unnecessary, because *res judicata* bars both claims that were actually litigated and those that could have been litigated. Constitutional challenges could have been raised before the MSPB and the Federal Circuit. *See supra* note 8.[12] Similarly, whether a particular plaintiff availed himself of all the appeals provided by the CSRA—review of regional MSPB decisions by the full MSPB, review of MSPB decisions in the Federal Circuit, and seeking review of Federal Circuit decisions in the United States Supreme Court— is irrelevant because, as noted above, failure to pursue an appeal does not alter the

**11.** The legality of the actions or policies challenged here clearly was addressed by the MSPB in proceedings involving these plaintiffs: ambiguity of President's ultimatum, *see Aiken*, Regional op. at 12–13, *Baker*, Regional op. at 96–98; lack of actual notice of ultimatum, *see Acosta*, Regional op. at 12 n. 16, *Baker*, Regional op. at 7; issuance of removal notices before deadline shift, *see, e.g., Aiken*, MSPB op. at 556, *Baker*, Regional op. at 72 n. 53; opportunity to mitigate severity of punishment, *see, e.g., Ayau*, Regional op. at 19–22, *Baker*, Regional op. at 75–79, 95–96; alleged "lock-out" of air traffic controllers, *see Baker*, Regional op. at 10–11; cancellation of leave time and days off, *see, e.g., Aiken*, MSPB op. at 556–57, *Acosta*, Regional op. at 20–21; placement in non-pay status pending removal, *see, e.g., Acosta*, Regional op. at 45–48, *Ayau*, Regional op. at 24–26; adequacy and legality of reply period, *see, e.g., Baker*, Regional op. at 7, 89–93, 98–101, *Prieto*, Regional op. at 12–14; denial of extensions, *see Aiken*, Regional op. at 25, *Baker*, Regional op. at 100; availability of information relied on by FAA, *see Acosta*, Regional op. at 44–45, 48, *Prieto*, Regional op. at 15; accuracy of FAA shift records, *see Aiken*, Regional op. at 17, *Acosta*, Regional op. at 12 n. 12; reliance on photographic evidence, *see, e.g., Aiken*, Regional op. at 17–18, *Acosta*, Regional op. at 13 n. 17; relevance of union activity before or after strike, *see Aiken*, Regional op. at 11–14, *Baker*, Regional op. at 12 n. 14, 22–24, 58–59; failure to conform to 1980 "Civiletti Memo," *see Baker*, Regional op. at 7, 93–95. While these decisions generally do not mention whether both statutory and constitutional challenges were raised, at least one of the decisions explicitly considered and rejected constitutional claims. *See Baker*, Regional op. at 22–24, 108–09.

**12.** The application of *res judicata* in situations where two tribunals share concurrent jurisdiction inevitably forces potential litigants to choose the forum in which they will litigate their claims. Here, plaintiffs had to choose between the immediate involvement in an Article III court in reviewing their constitutional claims, and the more comprehensive relief, with delayed review by an Article III court, available under the CSRA. Although requiring litigants to make such a choice may appear unfair or coercive to some litigants, the alternative—allowing parallel challenges and collateral attacks on MSPB and Federal Circuit judgments— would unjustifiably denigrate the competency of the MSPB and Federal Circuit to resolve constitutional challenges to federal personnel decisions.

preclusive effect of the initial judgment. Accordingly, counts one and two of the complaint, to the extent they challenge the constitutionality of a discharge, are dismissed with respect to all plaintiffs except Ken Geisert.[13]

■ A similar analysis applies to review of the OPM's suitability determinations. Plaintiffs Arakawa, Gonzales, Hall, McKee, Matsumoto, and Yap sought re-employment with the FAA and were found unsuitable by the OPM for re-employment. Hall, McKee, Matsumoto, and Yap have unsuccessfully challenged the OPM's decision before the MSPB, and consequently are barred by *res judicata* from relitigating their constitutional claims in this Court. To the extent that counts one and two of the complaint challenge the constitutionality of the OPM's suitability determinations, they are dismissed with respect to those four plaintiffs.[14]

### III. *Conclusion*

Defendants' motion to dismiss is granted in part and denied in part. Counts three through thirteen of the complaint are dismissed in their entirety. Counts one and two are dismissed in their entirety with respect to the MSPB and the Federal Circuit, and dismissed in part with respect to defendants FAA, OPM, and Reagan. To the extent counts one and two allege constitutional defects in the process through which air traffic controllers were discharged, they are dismissed with respect to all plaintiffs except plaintiff Geisert, and to the extent those counts allege constitutional defects in the process through which air traffic controllers have been found unsuitable for re-employment with the FAA, they are dismissed with respect to plaintiffs Hall, McKee, Matsumoto, and Yap.

Plaintiffs' motion to join additional plaintiffs is denied. Without more than plaintiffs' meager assertion that "[e]ach of the proposed plaintiffs was fired in August of 1981," the Court cannot determine whether the individuals who seek to join this suit have claims that may properly be addressed to this Court as part of this action. *See* Fed.R.Civ.P. 20(a).

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

This matter is before the Court on defendants' motion to dismiss the complaint and plaintiffs' motion to join additional plaintiffs. For the reasons explained in the accompanying Memorandum Opinion, upon consideration of the motions, the opposition to the defendants' motion, defendants' reply pleading, and the entire record, the Court concludes that defendants' motion should be granted in part and denied in part, and that plaintiffs' motion should be denied. Accordingly, it hereby is

ORDERED, that the complaint is dismissed in its entirety with respect to defendants Merit System Protection Board and the United States Court of Appeals for the Federal Circuit. It hereby further is

---

**13.** Alternatively, the Court would reach the same result by applying the exhaustion doctrine, as developed in *Andrade v. Lauer,* 729 F.2d 1475, 1490–92 (D.C.Cir.1984). Administrative processes are fully capable of addressing and remedying the alleged constitutional violations. Moreover, the four goals of the exhaustion doctrine would be served: the congressional desire that federal personnel matters be resolved under the CSRA would be respected; the parties would receive the benefit of the MSPB's and Federal Circuit's expertise in evaluating the sufficiency of the FAA's procedures; the already extensive factual record involving plaintiffs' discharges could be fully developed; and, most importantly, judicial economy would be greatly promoted by allowing the administrative processes voluntarily initiated by plaintiffs to run their course. As all but one of the plaintiffs have chosen to pursue administrative review of their claims, it would be wasteful and unnecessary to begin anew in this forum. *See also Gemmell v. FAA,* 558 F.Supp. 918, 920–21 n. 3 (D.D.C.1982) (air traffic controller's constitutional claims dismissed for failure to exhaust administrative remedies).

**14.** Without a more complete understanding of the factual background involving the OPM's suitability determinations, it is impossible for the Court to determine whether those plaintiffs who have not sought reemployment have standing to challenge the process. As none of the parties addressed standing in their briefs, the Court expresses no opinion on the issue at this time.

ORDERED, that counts three, four, five, six, seven, eight, nine, ten, eleven, twelve, and thirteen of the complaint are dismissed with respect to all defendants. It hereby further is

ORDERED, that counts one and two of the complaint, to the extent they raise challenges to the legality of plaintiffs' removals from federal employment, are dismissed with respect to all plaintiffs except plaintiff Ken Geisert. It hereby further is

ORDERED, that counts one and two of the complaint, to the extent they raise challenges to the legality of defendant Office of Personnel Management's policy on re-employment of air traffic controllers removed for illegal strike activity, are dismissed with respect to plaintiffs Thomas W. Hall, Charles K. McKee, Jr., Harold Matsumoto, and Albert Yap. It hereby further is

ORDERED, that plaintiffs' demands for monetary relief are stricken. It hereby further is

ORDERED, that plaintiffs' demand for trial by jury is stricken. It hereby further is

ORDERED, that plaintiffs' motion to join additional plaintiffs is denied. It hereby further is

ORDERED, that the remaining defendants shall file their answer, or otherwise respond, to the remaining claims under counts one and two of the complaint, within 14 days of the date of this Order.

SO ORDERED.